UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA   )
   )
     v.   )   1:12-cr-00160-JAW
   )
MALCOLM A. FRENCH, et al.   )

## ORDER ON GOVERNMENT'S MOTION IN LIMINE RE: ADMISSIBILITY OF DEPOSITION OF MARTIN ROBLERO

Concluding that the Government failed to demonstrate that an earlier-deposed but now deported alien witness is "unavailable" under the constraints of the Confrontation Clause and Federal Rule of Evidence 804(b)(1), the Court denies the Government's motion to introduce a videotape of his testimony in lieu of his live testimony in a criminal jury trial.

## I.    STATEMENT OF FACTS

In accordance with a Court Order dated May 8, 2013, Martin Roblero, a Government witness, testified by videotaped deposition on May 14, 2013. *Order Overruling Malcolm French's Objection to the Magistrate Judge's Order Regarding Dep.* (ECF No. 142). At the time of his testimony, Mr. Roblero was an illegal Mexican alien, had served a state of Indiana sentence for child molestation, and was subject to deportation from the United States. *Id.* at 3. After the Government contended that Mr. Roblero was a significant cooperating witness, who was likely to be deported from the United States during trial, the Court authorized the taking of Mr. Roblero's deposition under Federal Rule of Criminal Procedure 15, but observed

that it was not then addressing its admissibility. *Id.* at 12-17. Mr. Roblero has now been deported and the Government anticipates he will not be available for trial. *Id.* at 1.

Trial is looming. Jury selection is scheduled for January 8, 2013 and trial will proceed immediately thereafter. Seeking to admit the Roblero videotape deposition, the Government filed a motion in limine on December 6, 2013. *Gov't's Mot.* in Limine *Re: Admissibility of Dep. of Martin Roblero* (ECF No. 208) (*Gov't's Mot.*). On December 16, 2013, Malcolm French objected to the admission of the Roblero deposition. *Def. Malcolm French's Opp'n to Gov't's Mot. in Limine Re: Admissibility of Dep. of Martin Roblero* (ECF No. 211) (*French Opp'n*). On December 20, 2013, Haynes Timberland, Inc. joined in Mr. French's objection and presented its own argument in opposition. *Def. Haynes Timberland, Inc.'s Opp'n to Gov't's Mot. in Limine Re: Admissibility of Dep. of Martin Roblero* (ECF No. 213) (*Haynes Opp'n*). On December 23, 2013, Rodney Russell joined in the arguments of both Mr. French and Haynes Timberland. *Def. Russell's Opp'n to Gov't's Mot. in Limine Re: Admissibility of Dep. of Martin Roblero* (ECF No. 238). On December 24, 2013, the Government replied. *Gov't's Reply to Defs.' Objection to Gov't's Mot.* in Limine *Re: Admissibility of Dep. of Martin Roblero* (ECF No. 239) (*Gov't Reply*). On December 27, 2013, Kendall Chase filed a notice, confirming that he has no

objection to the admission of the Roblero deposition. *Notice of Def., Kendall Chase, Not to Oppose Roblero Dep., Mot. in Limine Req. by Gov't* (ECF No. 242).[1]

## II. POSITIONS OF THE PARTIES

### A. The Government's Motion

In its motion in limine, the Government confirms that, after his May 14, 2013 testimony, Mr. Roblero was in fact deported to Mexico on June 13, 2013 as a result of his commission of an aggravated felony. *Gov't's Mot.* at 1-2 & n.2. Counsel for the Government, Assistant United States Attorney (AUSA) Joel Casey, says that before Mr. Roblero was deported, AUSA Casey corresponded with an attorney in the Department of Homeland Security (DHS) to determine whether Mr. Roblero's deportation could be delayed. *Id.* at 2. Based on the DHS attorney's response, AUSA Casey formally requested that DHS defer deportation. *Id.* On May 17, 2013, DHS denied AUSA Casey's request for deferral because of Mr. Roblero's "recent and serious criminal conviction." *Id.* Attach. 3 *Letter from Michael Lana, Resident Agent in Charge, U.S. Immigration and Customs Enforcement, U.S. Dep't of Homeland Security* at 1 (May 17, 2013) (*Lana Letter*).

The Government emphasizes that before he was deported, it served Mr. Roblero with a subpoena requiring his attendance at trial, which was then set to begin on September 4, 2013. *Gov't's Mot.* at 2. The Government says that it gave Mr. Roblero detailed instructions in Spanish on "how, when and where to parole back in the [C]ountry to appear at trial" and reserved a plane ticket for him to fly

---

[1]    Robert Berg is also a Defendant; however, counsel informed the Court that he intends to enter a plea of guilty and the Rule 11 hearing on the guilty plea has been scheduled for January 7, 2014.

from Mexico to the United States. *Id.* The Government also provided Mr. Roblero with a letter from the federal prosecuting attorney to be presented to the first immigration officer that Mr. Roblero encountered on his return to the United States. *Id.* Finally, the Government obtained contact information in Mexico from Mr. Roblero. *Id.* The Government says that after the case was continued to January, 2014, it attempted to contact Mr. Roblero in Mexico but has been unable to do so. *Id.* at 2-3.

In these circumstances, the Government maintains that Mr. Roblero is "unavailable" under Federal Rule of Evidence 804(b)(1) and his deposition should be admitted. *Id.* at 3. It recites its efforts to present Mr. Roblero as a live witness at trial, including its request to DHS and its instructions to Mr. Roblero upon deportation about returning for trial. *Id.* at 4. Anticipating that the defense might argue that it should have used a material witness warrant, the Government sees "a couple problems with this argument." *Id.* at 4-5. First, the Government points out that a material witness subpoena was available to the Defendants. *Id.* Second, the Government observes that even if it had obtained a material witness warrant, Mr. Roblero would at most have been detained until September 2013, when trial was originally scheduled, not until January 2014, when it is being reached. *Id.*

The Government contends that the second prong of admissibility under Rule 804(b)(1)—similar motive and opportunity to develop the challenged testimony— has been satisfied in this case by the circumstances of the Rule 15 deposition in this

case.  *Id.* at 6-7.  The Government says that these circumstances also satisfy the Defendants' Confrontation Clause rights.  *Id.*

### B.     Malcolm French's Opposition

Mr. French objects to the admission of Mr. Roblero's videotape deposition. *French Opp'n* at 1-9.  First, Mr. French argues that the Government failed to exhaust all reasonable efforts to assure Mr. Roblero's availability for trial.  *Id.* at 3-6.  Next, Mr. French maintains that he did not have the opportunity to question Mr. Roblero about possible issues of witness collusion and therefore his rights under the Confrontation Clause would be violated with the admission of the Roblero deposition.  *Id.* at 6-9.

Regarding the first argument, Mr. French relies on the First Circuit case of *United States v. Mann*, 590 F.2d 361 (1st Cir. 1978), for his contention that the Government must engage in more than "perfunctory efforts" to obtain the absent witness's appearance.  *Id.* at 3-4.  Mr. French criticizes the Government's efforts as too late and too little.  *Id.*  He observes that the DHS agent who denied the Government's request for a stay of deportation recommended to the prosecutor that the Government obtain a material witness warrant, but the Government made no effort to do so.  *Id.*

Next, Mr. French also points out that the legal problems associated with detaining a witness who has not been charged with a crime are problems of the Government's own making.  *Id.* at 5.  He observes that the Government elected not to charge Mr. Roblero, and in fact gave him immunity in exchange for his testimony.

*Id.* If the Government had not done so, it could have sought to hold Mr. Roblero under the provisions of pre-trial detention law. *Id.* Moreover, Mr. French notes that the Government failed to make any provision in its immunity agreement with Mr. Roblero that would have required him to remain in the United States and make himself available for trial. *Id.* Indeed, Mr. French says that Mr. Roblero's immunity agreement provided for his prompt deportation. *Id.*

Finally, Mr. French contends that the Government could have, but failed to, keep Mr. Roblero in the United States for trial under 8 C.F.R. § 215.1, *et seq.* *Id.* at 6. This regulation allows the Government to prevent the deportation of an alien whose departure would be deemed prejudicial to the interests of the United States, including "an alien who is needed in the United States as a witness in . . . any criminal case . . . pending in a court in the United States." *Id.* (quoting 8 C.F.R. § 215.3).

Regarding the Confrontation Clause issue, Mr. French says that during an interview with the Government before his Rule 15 deposition, Mr. Roblero told the Government that Moises Soto, a co-defendant, approached him about Mr. Roblero's testimony. *Id.* at 7. Mr. French says that, like Mr. Roblero, Mr. Soto had entered into an agreement with the Government to testify against the remaining Defendants. *Id.* Mr. French contends that he is entitled—after Mr. Soto testifies— to cross-examine Mr. Roblero about what was said between Mr. Soto and himself and whether further statements were made between Mr. Soto and Mr. Roblero or other witnesses. *Id.* Finally, Mr. French observes that this is a "complex, multi-

defendant, drug conspiracy case" and he contends that his inability to confront a key cooperating Government witness in front of the jury deprives him of a fair trial. *Id.*

### C.     Haynes Timberland's Opposition

Haynes Timberland, a Co-defendant, also objected to the admission of Mr. Roblero's Rule 15 videotape deposition at trial.   *Haynes Opp'n* at 1-2.   Haynes Timberland echoes many of Mr. French's concerns: (1) whether the Government made a "good faith effort to procure" Mr. Roblero at trial; (2) the Government's failure to issue a material witness subpoena; (3) the Government's grant of immunity and "quick deportation" of Mr. Roblero; and (4) the implications from the cooperation of Moises Soto after Mr. Roblero's deposition.   *Id.* at 1-4.   Like Mr. French, Haynes Timberland argues that "[a] videotape made 8 months prior to trial is no substitute for testing the veracity of witnesses appearing live before a jury." *Id.* at 2.

### D.     The Government's Reply

Responding to Mr. French's argument that the Government should have done more to retain Mr. Roblero in the United States, the Government defends its efforts, noting that "[t]he steps the Government took to preserve Mr. Roblero's testimony and secure his appearance at trial are consistent with those suggested by the authority cited by the Government in its motion."   *Gov't's Reply* at 1.   The Government rankles at Mr. French's suggestion that its immunity agreement with Mr. Roblero deprived the Government of the ability to charge Mr. Roblero and

thereby make him available to testify at the upcoming trial. *Id.* at 1-2. The Government lays the blame for its inability to prosecute Mr. Roblero at the Defendants' doorstep, arguing that they "took steps to get Mr. Roblero and his co-workers out of the woods and out of the state," making prosecution more difficult. *Id.* at 2. The Government disputes Mr. French's reliance on 8 C.F.R. § 215.2 and § 215.3(g), contending that these regulations apply only to aliens seeking to depart the United States voluntarily, not to deportation or removal cases like Mr. Roblero's. *Id.* In fact, the Government observes that DHS decided to deport Mr. Roblero before the Government identified him as a witness and before his grand jury testimony, and therefore there could be no link between the deportation decision and the Government's actions here. *Id.* at 3. Finally, the Government disagrees with Mr. French's contention about his inability to cross-examine Mr. Roblero about Mr. Soto, noting that the Government had given Mr. French discovery about Mr. Soto and Mr. Roblero's conversation before Mr. Roblero was deposed. *Id.* at 3.

Turning to Haynes Timberland's arguments, the Government expresses surprise that Haynes' counsel would claim that he did not have an opportunity to cross-examine Mr. Roblero about an alleged promise by the Government, when the Government says that the transcript (which Haynes cites) reveals that Haynes' counsel did cross-examine Mr. Roblero regarding this alleged promise. *Id.* at 4.

## III.  LEGAL STANDARDS

### A.  The Confrontation Clause and Rule of Evidence 804

The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.

U.S. Const. amend. VI.  To comport with the Confrontation Clause, the United States Supreme Court has required that for testimonial evidence to be admitted in a criminal trial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  Federal Rule of Evidence 804(b)(1) tracks these constitutional requirements:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) Former Testimony.  Testimony that:
>
> > (A) was given as a witness at a trial, hearing, or lawful deposition, . . . given during the current proceeding . . . .; and
> > (B) is now offered against a party who had . . . an opportunity and similar motive to develop it by . . . cross-. . . examination.

FED. R. EVID. 804(b)(1)(A), (B).  Consistent with the constitutional requirements, Rule of Evidence 804(b)(1) thus mandates that the witness be unavailable and that the party against whom the evidence is being offered had an opportunity to cross-examine the witness.

### B.  Unavailability

Rule 804(a)(5) states:

> A declarant is considered unavailable as a witness if the declarant:
> . . .

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6) . . . .

FED. R. EVID. 804(a)(5). The advisory committee notes state that "[a]bsence from the hearing coupled with inability to compel attendance by process or other reasonable means also satisfies this requirement." *Id.* advisory committee note (1972). The advisory committee note also states that "[i]f the conditions otherwise constituting unavailability result from the procurement or wrongdoing of the proponent of the statement, the requirement is not satisfied." *Id.* Here, the Defendants do not claim that Mr. Roblero is currently available for trial; Mr. Roblero is apparently in Mexico and the Defendants do not assert that the Government could now force him to appear as a witness at trial in the United States. Thus, under longstanding Supreme Court jurisprudence, Mr. Roblero's prior testimony is potentially admissible because he is unavailable. *Mattox v. United States*, 156 U.S. 237, 240-50 (1895) (holding that prior trial testimony is admissible upon retrial if declarant becomes unavailable); *United States v. Lombard*, 72 F.3d 170, 188-89 (1st Cir. 1995).

But before prior testimony of an unavailable witness is admitted, the law requires more of the prosecution. In 1895, the United States Supreme Court observed:

> The primary purpose of the [Confrontation Clause] . . . was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against a prisoner in lieu of a personal examination and cross-examination of the witness in which the

accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242-43.  In recognition of this vital constitutional protection, in *Barber v. Page*, 390 U.S. 719 (1968), the United States Supreme Court held that "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724-25.  In *Ohio v. Roberts*, 448 U.S. 56 (1980), the Supreme Court reiterated this requirement: "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Id.* at 74.

The First Circuit considered this good faith requirement in *United States v. Mann*, 590 F.2d at 367-68.  In *Mann*, the defendant and a 17 year old Australian woman, Joanne Lyndal Shine, arrived in San Juan on the same plane.  *Id.* at 362. The authorities searched Ms. Shine and found eleven packages of cocaine taped inside her girdle; the defendant, who was also searched, was found not to possess any controlled substances.  *Id.*  After charges were dismissed against Ms. Shine, the Government moved and was granted the right to depose her, and the Government then presented Ms. Shine with her airplane tickets and passport.  *Id.* Ms. Shine flew back to Australia and declined to honor the Government's subpoena to return to Puerto Rico for trial.  *Id.*  The trial court admitted Ms. Shine's deposition at trial over the objections of the defendant.  *Id.*

The *Mann* Court set aside the defendant's conviction. *Id.* at 368. The First Circuit noted that "[i]mplicit . . . in the duty to use reasonable means to procure the presence of an absent witness is the duty to use reasonable means to prevent a present witness from becoming absent." *Id.* The First Circuit reviewed some of the Government's options: (1) placing her in "lesser custody"; (2) supplying "maintenance"; (3) retaining her passport and ticket; and (4) placing her under subpoena. *Id.* at 366. The *Mann* Court noted that the Government "failed even to extract a promise from [Ms. Shine] to return for trial." *Id.* In its analysis, the First Circuit observed that Ms. Shine was "vital to the government's case," *id.* at 367, and that a "lesser effort might be reasonable where the testimony goes to minor, collateral or uncontested matters." *Id.* at n. 6. In vacating the judgment, the First Circuit stressed that the Government's efforts to secure the witness for trial must be "genuine and bona fide." *Id.* at 367. Focusing on the language of Rule 805(a)(5), the First Circuit wrote that "'other reasonable means' besides subpoenas must be tried before a witness can be found unavailable." *Id.* The *Mann* Court emphasized that "[t]his relatively high good faith standard cannot be satisfied by perfunctory efforts." *Id.*

In 1997, the First Circuit was again presented with the admissibility of a deposition of a witness at a criminal trial. *United States v. McKeeve*, 131 F.3d 1 (1st Cir. 1997). In *McKeeve*, a British shipping agent was a critical witness and initially agreed to attend trial in the United States. *Id.* at 7. But as trial approached, the witness had a "change of heart" and the Government moved to depose him in

12

England.  *Id.*  The witness's deposition was subsequently read into evidence at trial. *Id.* at 7-8.  The *McKeeve* Court noted that although the prosecution's efforts to secure the witness's presence at trial "must be undertaken in good faith, they need not be heroic."  *Id.* at 8.  The First Circuit wrote that the "standard test for unavailability is whether the witness's attendance could be procured 'by process or other reasonable means.'"  *Id.* at 9 (quoting FED. R. EVID. 804(a))5)).  The First Circuit concluded that "[w]e fail to discern any further action the prosecutor reasonably could have taken to bring the witness before the jury."  *Id.*

## IV.    DISCUSSION

The Government lists its efforts to obtain Mr. Roblero's attendance at trial: (1) requesting that DHS delay his removal from the United States; (2) prior to deportation, serving Mr. Roblero with a trial subpoena with detailed instructions in Spanish on "how, when and where to parole back into the [C]ountry to appear at trial"; and (3) reserving a plane ticket for Mr. Roblero to fly from Mexico to the United States together with a letter from the prosecutor that he was instructed to present to an immigration officer.  *Gov't's Mot.* at 2.  It is true that these prosecutorial efforts were more significant than the efforts in *Mann.*  However, in the Court's view, the Government has still failed to meet the "relatively high good faith standard."  *Mann,* 590 F.2d at 367.

First, Mr. Roblero is a witness "vital to the government's case"; under First Circuit law, the more vital the witness, the greater the Government's burden.  *Id.* Mr. Roblero testified that he worked at the marijuana grow operation in

Washington County that the Government has alleged the Defendants in this case ran. He said he was present not only during the operation itself but also the day the police arrived. Mr. Roblero identified some of the Defendants as the individuals with whom he had dealings while working at the marijuana grow operation.

Second, the Defendants dispute Mr. Roblero's credibility. During cross-examination at his deposition, Mr. Roblero admitted that he had lied many times to the police during both his first and second law enforcement interviews. He also admitted that he was convicted in Indiana of child molestation. In these circumstances, in person testimony before the jury is more critical.

Third, unlike *McKeeve* and like *Mann*, Mr. Roblero was in Government custody and it was the Government that let him go. In fact, the Government forced him out. It is correct that the arm of the Government that deported him, the DHS, is not the arm of the Government prosecuting this case, the Department of Justice (DOJ)—but these are both agencies within the Executive Branch of the United States Government. The Court acknowledges that the DOJ does not control the DHS. *See Order* at 4 (ECF No. 114) ("The question of the witness's deportation . . . is not within the complete control or discretion of the United States Attorney's Office").

Nevertheless, the Court is not convinced by the Government's efforts to distance itself from the Government. The reason is that the DHS's ultimate response was limited to what it was, in its view, legally compelled to do with Mr. Roblero if it obtained custody of him. Here, the DOJ, which had custody of Mr.

Roblero at the time, asked the DHS, which would obtain custody after the scheduled deposition, not to deport him. The DHS denied the prosecutor's request because it interpreted that request as contrary to the DHS's legal obligations. But the DHS did not presume to dictate to the United States Attorney's Office what course to follow if Mr. Roblero remained DOJ custody. In fact, both DHS Assistant Chief Counsel Jalelian and DHS Agent-in-Charge Lana expressly informed AUSA Casey that DHS's obligation to deport Mr. Roblero attached only if he was in DHS custody. *Gov't Mot.* Attach. 2 *Email from Lincoln S. Jalelian to Ass't U.S. Att'y Casey* (May 9, 2013) (*Jalelian Email*) ("Were Roblero to be held pursuant to a Federal material warrant and be held in the custody of the US Marshal[]s [S]ervice, Roblero would not be in our custody and not able to be removed"); *id.* Attach. 4 *Letter from Michael C. Lana to Joel Casey, AUSA*, at 2 (May 17, 2013) (*Lana Letter*) ("It is my understanding that an appropriate and frequently used mechanism for prosecutors to keep an individual, such as Mr. Roblero in the United States, and available for the September 2013 trial is a Material Witness Warrant").

Fourth and most critically, ignoring the DHS's advice, the Government failed to seek a material witness warrant. As the *McKeeve* Court observed, the "standard test for unavailability is whether the witness's attendance could be procured 'by process or other reasonable means.'" *McKeeve*, 131 F.3d at 9 (quoting FED. R. EVID. 804(a))5)). Here, as he was being deported to Mexico, the Government handed Mr. Roblero a trial subpoena, knowing that once he crossed the United States border it would be ineffective. *See Gov't Mot. for Leave to Depose Prosective Witness* at 3

(ECF No. 86) ("It is unlikely that [Mr. Roblero] will be available to testify at trial, as he will be deported back to Mexico and outside the scope of the Court's subpoena authority").   For whatever reason, the Government did not pursue what was potentially the most effective "process" to assure Mr. Roblero's presence at trial.

The Government resolved not to follow DHS's suggestions and attempt to obtain a material witness subpoena, despite DHS's warning to the prosecution that it would be "our task" to deport Mr. Roblero if he returned to DHS custody.   The prosecution's decision not to attempt to continue to detain Mr. Roblero as material witness makes it more difficult for the Government to sustain its burden to demonstrate that it has met "the duty to use reasonable means to prevent a present witness from becoming absent."   *Mann*, 590 F.2d at 368.   The Government's decision not to act is surprising because the Government had moved for and obtained an Order of Detention on April 4, 2013, detaining Mr. Roblero as a material witness until the May 14, 2013 deposition.   *Order of Detention* (ECF No. 125).   In fact, Mr. Roblero consented to the detention.   *Id.* at 1.   Thus, the DOJ was holding Mr. Roblero as a material witness and, once he was deposed, it failed even to attempt to maintain his detention.[2]

---

[2]    The Government moved to depose Mr. Roblero on February 20, 2013.   *Mot. for Leave to Depose Prospective Witness* (ECF No. 86).   At that point, according to the Government, Mr. Roblero was in state custody in Indiana.   *Id.* at 2.   The Government applied for a material witness warrant for Mr. Roblero on February 22, 2013, Ex Parte *Application for Material Witness Warrant* (ECF No. 87), and the Court issued a warrant that same day.   *Warrant for the Arrest of a Witness* (ECF No. 88).   Most of the Defendants opposed the Government's motion to depose, ECF Nos. 96, 98, 101, 104; however, on March 22, 2013, Magistrate Judge Kravchuk granted the motion.   *Order* (ECF No. 114).
    Meanwhile, the state of Indiana released Mr. Roblero, presumably on March 3, 2013.   *See* Ex Parte *Application for Material Witness Warrant* ¶ 2.   By the time the Magistrate Judge issued her order allowing the deposition on March 22, 2013, the Government represented that Mr. Roblero was in federal custody.   *See Order* at 2 & n.2 (ECF No. 114).   On April 3, 2013, the Government moved to

The Government posits two defenses for its failure to move for a material witness warrant: (1) the material witness warrant was available to the Defendants and they elected not to pursue it and (2) an application for Mr. Roblero's continued detention from May to September would likely have been denied.[3]  The Court rejects the Government's argument that because any party may seek the detention of a material witness, it is the Defendants who should have moved to detain the Government's witness.  *Gov't's Mot.* at 5.  This contention ignores the fundamental tenet of criminal law that the defense bears no burden of proof and is not required to produce any witnesses.  *See Judge D. Brock Hornby's 2013 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 3.02 (updated Jun. 26, 2013) ("[Defendant] has the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against [him/her]").  The Government presents no

---

detain Mr. Roblero "pending deposition," *Mot. for Detention of Material Witness* (ECF No. 121), and the Magistrate Judge granted that motion on April 4, 2013.  *Order of Detention* (ECF No. 125).

It appears that the DOJ turned Mr. Roblero over to the DHS either on May 14, 2013, the date of the deposition, or early on May 15, 2013.  *See Jalelian Letter* at 2.  On May 15, 2013, AUSA Casey indicated in his letter to Agent Lana that Mr. Roblero was "in the custody of . . . DHS." *Gov't's Mot.* Attach. 3 *Letter from AUSA Joel Casey to RAC Lana*, at 1 (ECF No. 208) (May 15, 2013).  But Mr. Roblero was in DOJ custody as of May 9, 2013, when AUSA Casey wrote to Mr. Jalelian, *Jalelian Email* at 2, when Mr. Jalelian informed AUSA Casey that the DHS would deport Mr. Roblero if he were in DHS's custody.  *Id.*

[3]  The Government does not claim that because the Court allowed Mr. Roblero's videotape deposition to go forward, the Court must permit its introduction into evidence at trial.  In its Order Overruling Malcolm French's Objection to the Magistrate Judge's Order Regarding Deposition, the Court wrote:

> The Government should be aware that if it deports Mr. Roblero before trial, the Court will be required to demonstrate that he is "unavailable as a witness" before his deposition testimony may be admitted.  FED. R. EVID. 804(a).  Whether it will be able to make that showing if it deports Mr. Roblero is an open question.

*Order Overruling Malcolm French's Objection to the Magistrate Judge's Order Regarding Dep.* at 17 (ECF No. 142).

authority and the Court is aware of none for the novel proposition that a defendant is under an obligation to produce a Government witness for testimony in order to secure the Sixth Amendment right of confrontation.  The Government's argument also runs contrary to Federal Rule of Evidence 804(a)(5), which places the burden to demonstrate unavailability on the statement's proponent, not on the opponent.

It is true that the Magistrate Judge raised "substantial constitutional and procedural concerns with holding in custody for a prolonged period of time a material witness who is not charged with any crime in connection with these events." *Order* at 3-4.  It is also true that statutory law circumscribes the Court's authority to detain a material witness.  18 U.S.C. § 3144; *United States v. Nai*, 949 F. Supp. 42, 44 (D. Mass. 1996).  At the same time, § 3144 allows for continued detention if "necessary to prevent a failure of justice," and the Confrontation Clause and evidentiary arguments that the Defendants have raised may have made the case for such a failure.  How § 3144 would have applied, if at all, in this case is speculative, again because the Government did not invoke its provisions.

The Government relies on *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419-20 (5th Cir. 1992) in support of the proposition that "undocumented aliens have an overriding liberty interest in not being detained as material witnesses, when the deposition procedure serves as an adequate alternative to prolonged detention." *Gov't's Mot.* at 6.  But a careful reading of *Aguilar-Ayala* indicates why the Government's request here must fail.[4]  In *Aguilar-Ayala*, the Fifth Circuit was

---

[4] In *Aguilar-Ayala*, the Fifth Circuit cites *United States v. Guadian-Salazar*, 824 F.2d 344 (5th Cir. 1987) in which the Court vacated a conviction based in part of the admission into evidence of

18

addressing an application from detained alien witnesses seeking to be released pursuant to 18 U.S.C. § 3144. *Aguilar-Ayala*, 973 F.2d at 414. The statute places the burden on the movant to demonstrate that his "testimony can adequately be secured by deposition" and that "further detention is not necessary to prevent a failure of justice." *Id.* at 413 (quoting 18 U.S.C. § 3144). "Absent a 'failure of justice', the witness must be released." *Id.* The Fifth Circuit described in detail the ramifications of the admission of deposition testimony at a criminal trial:

> While we make no attempt to catalog any or all of the possible justifications which might warrant continued detention, we note that in some cases the need for *the criminal defendant* to confront the witness *at trial* (rather than at deposition) might outweigh the material witness' liberty interest in being released immediately. No doubt, few defendants regard trial by deposition as an adequate substitute for confronting the witness in the presence of the jury. Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness' testimony, by closely observing the witness' demeanor, expressions, and intonations. Videotaped deposition testimony, subject to all of the rigors of cross-examination, is as good a surrogate for live testimony as you will find, but it is still only a substitute. Even the advanced technology of our day cannot breathe life into a two-dimensional broadcast.

> Trial by deposition steps hard on the right of criminal defendants to confront their accusers. To be sure, deposition testimony is not routinely admissible: Only upon the exceptional showing of necessity (i.e., unavailability) will a court be justified in admitting such testimony over the defendant's objection. When a particular witness' testimony is the linchpin of the government's case, or when the witness' credibility is severely in doubt, the continued detention of that witness might be necessary to avert a "failure of justice," especially if the continued detention would be relatively brief.

---

deposition testimony over the objection of the defendant. In that case, the Government conceded that it had made no showing that the alien witnesses were unavailable. *Id.* at 346-48 ("The government asserts that . . . the admission into evidence of the depositions offended the sixth amendment's confrontation clause. . . . The government concludes that the defendant's conviction should be reversed").

*Id.* at 419 (emphasis in original).

To the Fifth Circuit concern about "stepping hard" on the Confrontation Clause, this Court adds that any trial takes on a life of its own. Even the best prepared lawyer must adjust tactics to respond to the opponent's presentation, to respond to unexpected testimony, to court rulings (favorable or not), jury composition, and even to such subtle matters as the tone of the trial, the lawyer's perception of juror receptivity, the apparent emotional impact of prior testimony, the hour in the day when the witness testifies, and a host of other tactical decisions that cannot be accurately assessed in advance. A videotaped deposition freezes testimony based on the lawyer's best but cloudy judgment and it is virtually inevitable that a videotaped deposition will be stale by the time it is shown to a jury. There will be questions asked at deposition that would not have been asked at trial and questions not asked that would be; questioning will be too long or too short; questions will explore areas that will be repetitive in light of already introduced trial testimony; questions will skip over areas that seemed insignificant at the time of the deposition but that have become vital at the time of trial; trial testimony will differ from what was anticipated pretrial. The list goes on. These and other considerations reinforce the wisdom of the Confrontation Clause and the constraints of Rule 804(b)(1). With these issues in mind, it is by no means certain that the *Aguilar-Ayala* Court would have countenanced the admission into evidence of prior testimony of a deported alien without any attempt by the Government to detain the alien using the material witness process.

It is also true that a request for continued detention under material witness warrant may have failed. *E.g.*, *In re Grand Jury Proceedings*, No. 10-mj-57-P-JHR, 2010 U.S. Dist. LEXIS 144359 (D. Me. Apr. 16, 2010). But it may have succeeded—and the Government did not try. For this reason, it is unknown whether Mr. Roblero would have objected to continued detention or some form of supervision and whether legitimate public safety concerns about Mr. Roblero's criminal conduct would have been ameliorated. In *Aguilar-Ayala*, the Fifth Circuit observed that the Government—as opposed to a defendant—"is uniquely capable of taking reasonable measures to insure that the witness will appear at trial." *Aguilar-Ayala*, 973 F.2d at 419. For example, the Fifth Circuit suggested that the Government may "'parole' the alien-witness into the community (rather than deport him) so that he will remain within the reach of judicial process." *Id.* Furthermore, the Government entered into an immunity agreement with Mr. Roblero and the record is silent as to whether the Government attempted to negotiate something short of his immediate deportation. There is no evidence that the Government attempted any of these "reasonable measures" to detain Mr. Roblero. *Id.* at 418. Instead the Government simply handed Mr. Roblero over to DHS with the sure knowledge that DHS would deport him and that, once deported, Mr. Roblero would be beyond the subpoena authority of the Court.

By failing to seek Mr. Roblero's continued detention, the Government effectively prevented timely judicial consideration of whether Mr. Roblero should have been detained from May to September. Those considerations would have

included: (1) the length of continued detention, (then from May 14, 2013 to September 5, 2013, a period of about sixteen weeks);[5] (2) the significance of his testimony; (3) the centrality of his credibility; (4) areas of potential cross-examination not explored at the time of his videotaped deposition; (5) the conditions of his confinement; (6) any feasible alternatives to confinement, such as electronic monitoring or community confinement; and (7) Martin Roblero's position on his continued detention.[6]

In its reply, the Government concludes that by objecting to the admission of Mr. Roblero's videotape, the Defendants are accusing the Government of acting in bad faith. *Gov't's Reply* at 1 ("[French makes] a related argument that the Government acted in 'bad faith'"). The Court does not conclude that the Government acted in bad faith—only that the Government did not bear its burden to demonstrate that it met the "relatively high good faith standard." *Mann*, 590 F.2d at 367. In *Mann*, the First Circuit presented a helpful formulation of the question: even though the Government may be "satisfied with what is in the transcript," the Government is still obligated to make "as vigorous an attempt to secure the presence of the witness as it would have made if it did not have the prior recorded testimony." *Id.* If the Government did not have Mr. Roblero's prior

---

[5]  After Mr. Roblero was out of the Country, the Defendants moved to continue the case until January 2014. *See Def. Robert Berg's Mot. to Continue Case from the Trial List* (ECF No. 166). By the time the Defendants made this motion, however, was after Mr. Roblero had been returned to Mexico when he was beyond the reach of a federal court subpoena. The Defendants had no reason to balance their need for the four-month continuance against the desirability of having Mr. Roblero testify live before a jury in September.

[6]  Typically, it is reasonable to assume that someone confined in prison would prefer to be free. Certainly this may have been true for Mr. Roblero. At the same time, Mr. Roblero entered into custody without objection and it could have been that he would not have objected to continued detention (or some lesser form of monitoring) from May to September before deportation.

recorded testimony, the Court is convinced that the Government would have sought a material witness warrant and tried to secure his continued detention.[7]

## V.    CONCLUSION

The Court DENIES the Government's Motion in Limine Re: Admissibility of Deposition of Martin Roblero (ECF No. 208).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 6th day of January, 2014

---

[7]    To close the circle, having resolved the motion on the issue of unavailability, the Court does not reach whether the Government fulfilled the second criteria for admission under Rule 804(b)(1)(B): that the evidence must be "against a party who had . . . an opportunity and similar motive to develop it by . . . cross-. . . examination." Here, the Defendants complain that developments after the deposition deprived them of the opportunity to cross-examine Mr. Roblero on a vital matter. *French Opp'n* at 7. The Court is not in a position to make a pretrial determination of the impact, if any, of the newly discovered evidence on Mr. Roblero's testimony. Had the Court concluded that Mr. Roblero was available under Rule 804(b)(1), it would have deferred ruling on the admissibility of the Roblero deposition until trial to allow an assessment of the practical significance of the new information. But the Court determined that the Roblero deposition is inadmissible because the Government has not shown that he is unavailable, and does not rule on the "opportunity and motive" criterion.