UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT**

The Court rejects Malcolm A. French's motion to dismiss the superseding indictment in this case. The evidence fails to demonstrate any governmental misconduct, much less misconduct that would justify dismissal, and the evidence fails to demonstrate any prosecutorial vindictiveness in initiating and pressing the charges of which Mr. French was convicted. To the extent Kendall Chase and Rodney Russell join in Mr. French's motion to dismiss, the Court rejects their motions for the same reasons.

**I.    BACKGROUND**

   **A.    Procedural History of the Case in General**

On September 14, 2012, a federal grand jury indicted Malcolm A. French, Rodney Russell, Kendall Chase, and Haynes Timberland, Inc. for a series of federal crimes relating in general to their alleged involvement with a marijuana growing operation in Maine.[1] *Indictment* (ECF No. 2). On November 13, 2013, a grand jury issued a superseding indictment. *Superseding Indictment* (ECF No. 187). Jury

---

[1]    Other Defendants were also indicted but are not relevant to the pending motion.

selection was held on January 8, 2014, and a jury trial commenced immediately after selection. *Min. Entry* (ECF No. 281). The trial took place from January 8, 2014 through January 24, 2014. *Min. Entry* (ECF No. 308). On January 24, 2014, the jury returned verdicts finding Malcolm French, Rodney Russell, and Kendall Chase guilty of engaging in a conspiracy to manufacture marijuana, finding Malcolm French and Rodney Russell guilty of manufacturing marijuana, finding Malcolm French, Rodney Russell, and Haynes Timberland, Inc. guilty of managing or controlling a drug-involved premises, finding Malcolm French and Rodney Russell guilty of harboring illegal aliens, and finding Malcolm French, Rodney Russell, and Kendall Chase guilty of engaging in a conspiracy to distribute marijuana. *Jury Verdict Form* (ECF No. 311).

  **B.**  **Procedural History of the Motion to Dismiss the Indictment**

On September 22, 2015, Malcolm French moved to dismiss the indictment, asserting that the Government had procured the indictment by presenting false testimony to the grand jury. *Def. Malcolm French's Mot. to Dismiss Indictment* at 2-12 (ECF No. 583) (*Def.'s Mot.*). Mr. French also claimed that he was the victim of a vindictive prosecution in obtaining the superseding indictment and demanded that the indictment be dismissed for that reason as well. *Id.* at 12-16. On September 22, 2015, the Government filed a brief response, opposing the motion to dismiss. *Gov't's Obj. to the Def. French's Mot. to Dismiss Indictment* (ECF No. 584) (*Gov't's Opp'n*). On September 23, 2015, Rodney Russell, a co-defendant, joined Mr. French's motion to dismiss. *Def. Rodney Russell's Joinder with Def. Malcol[m] French's Mot. to*

*Dismiss Indictment* (ECF No. 585) (*Russell Joinder*). At some point that is not entered on the docket, Kendall Chase informed the Clerk's Office that he was joining in Mr. French's motion to dismiss. *See Def. Kendall Chase's Am. Mot. for New Trial* at 1 (ECF No. 588) (*Chase Am. Mot.*). On October 2, 2015, Mr. French replied to the Government's response. *Def. Malcolm French's Reply to the Gov't's Objs. to Def.'s Mot. to Dismiss Indictment* (ECF No. 587) (*Def.'s Reply*).

On October 8, 2015, Kendall Chase formally joined Mr. French's motion to dismiss but withdrew any claim of prosecutorial misconduct, either vindictive prosecution or subornation of perjury. *Chase Am. Mot.* at 1-2.[2] On October 18, 2015, Rodney Russell filed a similar retraction, stating that he withdrew all joinder with Malcolm French's motion to dismiss the indictment "insofar as [that motion alleges] the Government or it[]s prosecutors suborned perjury or undertook vindictive prosecution." *Def. Rodney Russell's Mot. for New Trial and Withdrawal of All Joinder with Claims the Gov't Suborned Perjury* (ECF No. 590) (*Russell Withdrawal*). After these Defendants withdrew a portion of their claims, Mr. French filed a response to Mr. Chase's new position on October 21, 2015. *Def. Malcolm French's Resp. to Def.*

---

[2]   It is not entirely clear whether Kendall Chase intended to join Mr. French's motion to dismiss the indictment. In Mr. Chase's amended motion for new trial, he wrote that he "joins in the portions of Defendant French's *two most recent motions* regarding the existence of exculpatory or impeaching evidence." *Chase Am. Mot.* at 4 (emphasis added). This suggests Mr. Chase intended to join Mr. French's motion to dismiss indictment (ECF No. 583) and his third motion for new trial (ECF No. 554)—i.e., Mr. French's two most recent motions as of the date that Mr. Chase filed his amended motion: October 8, 2015. Nonetheless, Mr. Chase did not elsewhere move to join Mr. French's motion to dismiss the indictment, and he distanced himself from any claim of vindictive prosecution or suborned perjury. *Id.* at 2 ("Counsels reiterate our analysis and conclusion regarding the suborning perjury claim; likewise, we do not believe adequate proof exists to make a claim based upon vindictive prosecution . . ."). With this ambiguity, the Court assumes that Mr. Chase intended to join the motion to dismiss the indictment but to exclude any claim of prosecutorial misconduct.

3

*Kendall Chase's Am. Mot. for New Trial and Joinder of* Brady/Franks *Mot.* (ECF No. 595) (*French's Chase Resp.*).

## II.   THE POSITIONS OF THE PARTIES

### A.   Malcolm French's Motion

#### 1.   The False Testimony Allegation

In the motion, Mr. French claims that Special Agent Richards provided false testimony to "several grand juries." *Def.'s Mot.* at 2. He lists eleven instances of Special Agent Richards' allegedly false testimony. *Id.* at 2-4. He also alleges that Winston McTague provided false testimony to the grand jury on January 13, 2010 and that he recanted his false testimony on December 10, 2013 and January 2, 2014. *Id.* at 5. Mr. French lists seven alleged incidents of false testimony. *Id.* at 5-6.

#### 2.   The Vindictive Prosecution Allegation

Mr. French claims that the Government vindictively prosecuted him for exercising his constitutional right to a jury trial. *Id.* at 12-14. Specifically, Mr. French asserts that after he declined to plead guilty, the Government obtained a superseding indictment that provided for mandatory minimum sentences. *Id.* at 14. Mr. French maintains that the charges against him ran against national trends and directives concerning the prosecution of marijuana cases. *Id.* at 14-16.

### B.   The Government's Opposition

The Government first notes that Mr. French's motion to dismiss is late and that Mr. French has not explained why his late filing is justified by good cause. *Gov't's Opp'n* at 1. The Government rejects Mr. French's false testimony claims, noting that

the Government proved Mr. French guilty beyond a reasonable doubt before a federal jury. *Id.* at 1-2. Finally, the Government contends that Mr. French has not demonstrated the prosecution was vindictive under First Circuit standards. *Id.* at 2.

### C. Malcolm French Reply

In his reply, Mr. French first contends that the motion to dismiss is not late because he learned of the facts underpinning the motion in the spring of 2015. *Def.'s Reply* at 1-4. Mr. French also argues that the Government failed to substantively respond to his claims of false testimony. *Id.* at 4.

### D. Kendall Chase Limited Joinder

After initially joining Mr. French's motion, on October 8, 2015, Mr. Chase filed an amended motion for new trial. *Chase Am. Mot.* at 1-10. In that motion, Mr. Chase's counsel wrote that when he was informed by the United States Attorney that Mr. French's motion had claimed that Assistant United States Attorney Joel Casey had suborned perjury, Attorney Leonard Sharon's "jaw dropped." *Id.* at 1. Mr. Chase withdrew his joinder in the French motion to the extent it alleged that "the government suborned perjury" and he further indicated that "we do not believe adequate proof exists to make a claim based upon vindictive prosecution." *Id.* at 2. Mr. Chase stated, however, that he continued to join the French motion to the extent that the Government may have committed a *Brady*[3] or *Franks*[4] violation.[5]

---

[3]     *Brady v. Maryland*, 373 U.S. 83 (1963).
[4]     *Franks v. Delaware*, 438 U.S. 154 (1978).
[5]     The Court addressed these issues in its Order Denying Defendant French's Third Motion for New Trial; Defendant Chase's Amended Motion for New Trial; and Defendant Russell's Motion for New Trial dated November 17, 2015 (ECF No. 598).

### E. Rodney Russell Limited Joinder

In his initial joinder, Mr. Russell simply adopted Mr. French's motion and memorandum and did not relate those arguments to his specific case. *Russell Joinder* at 1. Later, Mr. Russell clarified that, in joining this motion to dismiss, he was not pursuing any claims that the federal prosecutor suborned perjury or that the prosecution was vindictive. *Russell Withdrawal* at 1.

### F. Malcolm French's Response to Kendall Chase's Limited Joinder

In his response, Mr. French objects to Mr. Chase's withdrawal of his joinder in the French motion to dismiss, perceiving an "unusual partnering of the prosecutor and Defendant Chase." *French's Chase Resp.* at 1. Mr. French protests that he did not accuse the federal prosecutor of suborning perjury. *Id.* Instead, he explained that he charged the federal prosecutor with the knowing use of false testimony, not suborning perjury. *Id.* 1 n.1, 4. He then reiterated his positions regarding the merits of his pending motion to dismiss. *Id.* at 1-8.

## III. THE LAW

### A. The Motion to Dismiss the Indictment

Unlike civil actions, an indictment is not generally subject to dispositive motion practice. *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009). *See also United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000). "[D]ismissing an indictment is an extraordinary step," *Li*, 206 F.3d at 62 (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)) because, by returning an indictment, a grand jury is carrying out a constitutionally sanctioned function. *See* U.S. CONST. amend. V ("No

person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). In the First Circuit's words, "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury." *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)). This power is "appropriately reserved, therefore, for extremely limited circumstances."[6] *Id.*

"In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct." *United States v. Guzman*, 282 F.3d 56, 59 (1st Cir. 2002) (citing *United States v. Russell*, 411 U.S. 423, 431-32 (1973); *United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992)). To succeed under this theory, Mr. French must demonstrate Government misconduct "so appalling and egregious as to violate due process by 'shocking . . . the universal sense of justice.'" *United States v. Luisi*, 482 F.3d 43, 59 (1st Cir. 2007) (quoting *Russell*, 411 U.S. at 432). In 2012, the First Circuit observed that "[w]hile the doctrine is often invoked by criminal defendants, it has never yet been successful in this circuit." *United States v. Djokich*, 693 F.3d 37, 43-44 (1st Cir. 2012) (quoting *Luisi*, 482 F.3d at 59).

**B.     Knowing Use of Perjured Testimony**

---

[6]     There is a separate set of precepts for motions to dismiss an indictment where the defendant claims that the indictment is legally insufficient. Mr. French makes no such claim, and the Court has not addressed those standards.

7

There is, as Mr. French pointed out, a legal distinction between suborning perjury and the knowing use of false testimony.

In 1950, the United States Supreme Court established the rule for knowing use of false testimony: "a prosecutor 'may not knowingly use false evidence, including false testimony, to obtain a tainted conviction regardless of whether the prosecutor solicits false evidence or . . . allows false evidence to go uncorrected when it appears.'" *United States v. Flores-Rivera*, 787 F.3d 1, 31 (1st Cir. 2015) (quoting *United States v. Mangual-Garcia*, 505 F.3d 1, 10 (1st Cir. 2007)) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1950)). Mr. French contends that the federal prosecutor in this case violated those obligations by "the knowing use of perjured testimony." *French Chase Resp.* at 4.

By contrast, the federal crime of suborning perjury is statutorily defined: "Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1622. The First Circuit has set out the elements of suborning perjury: "[S]ection 1622 can be satisfied by procuring a person to lie materially in 'any declaration, certificate, verification, or statement under penalty of perjury.'" *United States v. LeMoure*, 474 F.3d 37, 44 (1st Cir. 2007) (quoting 18 U.S.C. § 1621).

In the context of the pending motion, the distinction between these two legal concepts is more semantic than practical. It is true that Mr. French is not accusing the federal prosecutor of actively procuring false testimony, but he is accusing the federal prosecutor of knowingly presenting it. The essence of Mr. French's allegation

8

is that the federal prosecutor knowingly presented false testimony as true to a grand jury and petit jury or failed to correct testimony before these juries that the prosecutor knew was false. By either name, Mr. French's accusation is a manifestly serious charge against the integrity and professional ethics of a federal prosecutor. *See* M.R. PROF. CONDUCT 3.3(3) ("A lawyer shall not knowingly offer evidence that is false. If a . . . witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal").

### C. Vindictive Prosecution

"A vindictive prosecution—one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right—violates a defendant's Fifth Amendment right to due process." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). A defendant may establish a vindictive prosecution claim either "(1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *Id.* (citing *United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir. 1987)). If a defendant can "point to specific facts that raise a likelihood of vindictiveness a district court must grant an evidentiary hearing on the issue." *United States v. Lanoue*, 137 F.3d 656, 665 (1st Cir. 1998) (citing *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989); *United States v. Napue*, 834 F.2d 1311, 1329 (7th Cir. 1987)). However, there must be "some evidentiary predicate" and "merely chanting the mantra of

9

prosecutorial vindictiveness gets a defendant nowhere." *United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000) (citing *Lanoue*, 137 F.3d at 665; *Stokes*, 124 F.3d at 46; *United States v. Sutherland*, 929 F.2d 765, 772, n.2 (1st Cir. 1991)).

"It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption." *Stokes*, 124 F.3d at 45. Because Mr. French failed to raise a claim of vindictive prosecution before trial, his claim is waived and the court reviews the question only for plain error. *United States v. Peterson*, 233 F.3d 101, 105 (1st Cir. 2000). Furthermore, the prosecutor is entitled to "a threshold presumption that [he] acted in good faith for reasons of sound governmental policy." *United States v. Gary*, 74 F.3d 304, 313 (1st Cir. 1996) (alteration in original) (citations and internal punctuation omitted).

"To overcome the presumption of good faith, a defendant must establish that his prosecution results from 'intentional and purposeful discrimination.'" *United States v. Bassford*, 812 F.2d 16, 19 (1st Cir. 1987) (citing *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)). "To rebut this presumption and obtain an evidentiary hearing on the issue, the defendant must allege facts (1) tending to show selective prosecution, and (2) raising a reasonable doubt about the propriety of the prosecution's motives." *Peterson*, 233 F.3d at 105 (footnote omitted). To make out a claim of selective prosecution, a defendant must show that he "was prosecuted while others similarly situated were not." *Id.* (quoting *Bassford*, 812 F.2d at 19). "Our

10

cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). To cast a pall over the prosecutor's motives, a defendant must show that the Government's prosecution was "in bad faith," which the First Circuit observed includes such impermissible motivations as race, religion, or the desire to prevent the exercise of a defendant's constitutional rights. *Bassford*, 812 F.3d at 19 (quoting *Berrios*, 501 F.2d at 1211).

## IV. DISCUSSION

### A. Motion to Dismiss

In a companion motion for new trial, Mr. French raised many of the same factual issues he has raised in his motion to dismiss the indictment. In a separate order, the Court engaged in a detailed analysis of the factual underpinnings of Mr. French's charges and concluded they are meritless. *Order Denying Def. French's Third Mot. for New Trial; Def. Chase's Am. Mot. for New Trial; And Def. Russell's Mot. for New Trial* (ECF No. 598) (*Order Denying Third Mot. for New Trial*). The Court will not indulge the motion to dismiss by analyzing each alleged lie that Mr. French claims the Government presented to the grand jury.

One example suffices because allegations are easy and explanations require context. In his motion, Mr. French alleges that Special Agent Richards lied to the grand jury when he testified that "Moises Soto was getting money directly from Malcolm French to pay Hispanic workers." *French Mot.* at 3. Mr. French cites two lines of Special Agent Richards' November 13, 2013 testimony:

11

> Q. So to be clear, Mr. Soto was getting money from Malcolm French - -
> A. Yes.

*Id.* Attach. 6 *Grand Jury Test. of Jonathan Richards* 76:5-7. Although the cited portion does not address payment of the Hispanic workers, the Court located relevant testimony elsewhere on the same page:

> Q. So to be clear, Mr. Soto was getting money from Malcolm French - -
> A. Yes.
> Q. - - on a periodic basis?
> A. Correct.
> Q. He would use that money to pay the migrant laborers?
> A. Yes.

*Id.* 76:5-13. Mr. French claims this grand jury testimony is false because "according to Soto's interview with law enforcement Scott MacPherson paid Moises Soto, and Moises paid the workers." *French Mot.* at 3.[7]

Mr. French's characterization of Special Agent Richards' grand jury testimony is inaccurate in a significant way. Mr. French claims that Special Agent Richards testified before the grand jury that "Moises Soto was getting money <u>directly</u> from Malcolm French to pay Hispanic workers." *French Mot.* at 3 (emphasis supplied). He did not. Special Agent Richards only testified that Mr. Soto was getting the money "from Mr. French," not directly from Mr. French. There is an important difference between what Mr. French said Special Agent Richards said and what Special Agent Richards actually said.

---

[7] In his motion, Mr. French cites "5.10.13 Soto Interview R_11015" as authority for this proposition. *French Mot.* at 3. The Court could not locate this interview in the documents that Mr. French attached to his motion. *Id.* Attachs. 1-16. The Court assumes that Mr. French has correctly characterized the contents of Mr. Soto's May 10, 2013 interview.

12

Moises Soto testified at trial. *Partial Tr. of Proceedings* (ECF No. 369) (*Test. of: Moises Soto*) (*Soto Test.*). Mr. Soto testified that he met Malcolm French sometime before 2003 or 2004. *Id.* 7:16-8:2. Mr. French hired Mr. Soto to do some logging work. *Id.* 8:10-14. In 2007, according to Mr. Soto, Mr. French approached him to obtain some migrant workers to "clean[] pot." *Id.* 9:5-10:12. Mr. French agreed to pay Mr. Soto $100 per pound of cleaned pot. *Id.* 10:19-23. Mr. French needed the workers "as soon as possible," and the work was to be done in a warehouse. *Id.* 10:24-11:4. As a contact person, Mr. French provided Mr. Soto with Scott MacPherson's name and information; at this point, Mr. Soto did not know Mr. MacPherson. *Id.* 11:14-21.

Following this conversation and a conversation with Mr. MacPherson, Mr. Soto was able to obtain migrant workers through a contact named El Negro. *Id.* 13:2-15. Within a couple of weeks, Mr. Soto was able to bring three migrant workers to the warehouse. *Id.* 13:13-14:10. The workers set about cleaning marijuana. *Id.* 15:10-13. Mr. Soto testified that he would occasionally go to the warehouse to check on the workers. *Id.* 16:2-4. When he went to the warehouse, Mr. MacPherson was there and Malcolm French would sometimes be there as well. *Id.* 16:7-16.

Regarding payment of the workers, Mr. Soto testified:

```
Q. Who was paying the workers?
A. Scott, but the - -
Q. So would the - - would Scott physically hand the pay to the workers?
A. Yes.
Q. Did you ever pay the workers?
A. I don't pay the workers.
Q. Okay. So did you ever - - so you've seen Scott pay these workers?
A. Sometimes. Sometimes they give the money to me to give it to them.
Q. All right. So when you say they would give you the money to give to
   the workers - -
```

    A. Well, no, he - - he give the money to me, and then I'd give it to them.
    Q. All right. I just want to be clear, Mr. Soto.
    A. That's okay.
    Q. Sometimes you would see Scott pay the workers?
    A. Yes, sometimes he gave it to them.
    Q. And sometimes Scott would give you money to pay to the workers.
    A. Yes.
    Q. Did anybody else ever give you money to pay the workers?
    A. No.
    Q. Okay. And how much were the workers being paid?
    A. If it was cleaning, they'd give me a hundred dollars per pound and I divide it to them.
    Q. Did Scott ever tell you where he was getting the money that he was using to pay the workers?
    A. Yes.
    Q. Where was he getting the money?
    A. Malcolm French.

*Id.* 17:11-18:18.

    Based on this testimony, Mr. French hired Mr. Soto to procure migrant workers to clean marijuana in Mr. French's warehouse,[8] and he agreed to pay Mr. Soto $100 per pound of cleaned marijuana. Mr. French gave Mr. MacPherson's name and contact information to Mr. Soto. Mr. Soto procured three migrant workers for Mr. French, and they worked in the warehouse, doing the job that Mr. French had anticipated. Mr. MacPherson and occasionally Mr. French would be present at the warehouse while the migrant laborers were doing the work.

    Regarding payment of the workers, Mr. Soto testified that Mr. French was the source of the funds to pay the migrant workers. In light of the entire context, whether Mr. French paid Mr. MacPherson who paid the workers or Mr. French paid Mr. Soto

---

[8]     This portion of Mr. Soto's testimony does not establish that the warehouse was Mr. French's, but there is other evidence that does. *See Partial Tr. of Proceedings* 44:4-23 (ECF No. 362) (*Test. of Malcolm French*); *Partial Tr. of Proceedings* 12:18-13-13 (ECF No. 364) (*Test. of Rodney Russell*).

14

who paid the workers or a combination of the two is hardly a detail that makes a difference in this case; in either case, Mr. French was the source of the funds. If Mr. MacPherson was an intermediary for the funds, Special Agent Richards' grand jury testimony was still correct in testifying before the grand jury that the money was coming from Malcolm French.

This analysis demonstrates on this single point that Mr. French mischaracterized Special Agent Richards' testimony, and that properly analyzed, the asserted lie was no lie at all.

The Court will not perform a similar analysis on each of the asserted pieces of false testimony. The Court has reviewed those allegations and has concluded that they are without merit. The plain fact is that the evidence of Mr. French's involvement in a large-scale marijuana growing operation in Township 37 is overwhelming. *See Order Denying Third Mot. for New Trial* at 62-63 (discussing the evidence against Mr. French).

In short, the Court rejects Mr. French's contention that there was "government misconduct" in this case. *Guzman*, 282 F.3d at 59. The Court found none, much less Government misconduct "so appalling and egregious as to violate due process by 'shocking . . . the universal sense of justice.'" *Luisi*, 482 F.3d at 59 (quoting *Russell*, 411 U.S. at 432).

### B.  Vindictive Prosecution

The Court concludes that Mr. French's vindictive prosecution claim is frivolous. In his motion, he makes allegations about plea negotiations in the fall of

2013 in which the "government advised Mr. French that if he did not plead guilty, a superseding indictment with mandatory sentencing language would be obtained." *French Mot.* at 14.  Mr. French sees this Governmental advice as coercive and intended to affect his right to trial by jury.  *Id.*  Against what he characterizes as a dramatic change in the "national marijuana landscape," Mr. French claims that he was "threatened by AUSA Casey with a minimum mandatory sentence of ten years if Mr. French did not plead guilty to the original indictment." *Id.* at 14-15.

What Mr. French does not mention is that when he was originally indicted on September 14, 2012, he was subject to a ten-year mandatory minimum prison term on Counts One and Two.  *Indictment* (ECF No. 2); *Synopsis* (ECF No. 3) ("At least 10 years and up to life imprisonment, $10,0000,000 fine, or both.  See 21 U.S.C. § 841(b)(1)(A)").  While the case was pending but before trial, the United States Supreme Court decided *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which overruled *Harris v. United States*, 530 U.S. 466 (2000) and held that facts that increase a sentencing floor must be presented to a jury and found beyond a reasonable doubt.  *Alleyne*, 133 S. Ct. at 2161.  In addition, the *Alleyne* Court observed that "[d]efining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the fact of the indictment." *Id.* at 2161.  As this language was read as mandating that the Government charge in the indictment or other charging instrument the essential facts that would trigger a mandatory minimum, the United States Attorney's Office in Maine placed Mr. French on notice on August 9, 2013 that it

might seek a superseding indictment "to add allegations that satisfy Alleyne." *Gov't's Opp'n* Attach. 1 *Letter from Joel Casey to Counsel of Record Aug. 9, 2013*, at 1.

Several facts undercut Mr. French's vindictive prosecution claim. First and most significantly, the penalty provisions for Counts One and Two of the original indictment and the superseding indictment are identical. *Compare Synopsis* (ECF No. 3), *with Superseding Synopsis* (ECF No. 182). This is not a case where the Government enhanced the penalties after failed plea negotiations; it is a case where the Government maintained the same penalties originally charged. *Cf. United States v. Tobin*, 598 F. Supp. 2d 125, 129 (D. Me. 2009) ("courts view skeptically the government's decision to file more severe charges following a defendant's successful appeal of his conviction"). Second, as to Mr. French's claim that the Government's tactics were intended to chill his exercise of his right to a jury trial, the record in this case establishes that Mr. French in fact exercised his right to a jury trial and was found guilty as charged after an extended trial. Third, Mr. French is attempting to make the case that the prosecution was vindictive, when the jury found him guilty as charged. Although not determinative, it is more difficult to prove that a successful prosecution was vindictive. Fourth, although Mr. French says that the decision to obtain a superseding indictment was made as a consequence of the failed plea negotiations in the fall, the date of the Casey letter confirms that the Government was considering obtaining a superseding indictment in his case as early as August 9, 2013 and had placed him on notice of this possibility at that time. Fifth, the grand jury issued superseding indictments against Mr. French, Mr. Russell, and Mr. Chase,

17

and there is no evidence in this record that either Mr. Russell or Mr. Chase was similarly engaged in failed plea negotiations before the superseding indictment issued. In other words, there is no evidence that the Government selectively prosecuted Mr. French by showing that he "was prosecuted while others similarly situated were not." *Peterson*, 233 F.3d at 105 (quoting *Bassford*, 812 F.2d at 20). Sixth, the Court is aware from its own docket that the Government sought superseding indictments following *Alleyne* in a number of cases, not limited to the French case. The fact that the Government sought a superseding indictment to meet the *Alleyne* pleading requirements is unremarkable. *See United States v. Young*, No. 2:13-cr-193-GZS, 2014 U.S. Dist. LEXIS 122221, at *41-45 (D. Me. Sept. 1, 2014).

To sustain a vindictive prosecution claim, the defendant must "rais[e] a reasonable doubt about the propriety of the prosecution's motive." *Peterson*, 233 F.3d at 105 (citing *Gary*, 74 F.3d at 313). Here, the prosecutor's motive in obtaining a superseding indictment against Mr. French was to conform the charging instrument to the requirements of intervening Supreme Court authority. It is difficult to fathom how a prosecutor's attempt to make certain that the charging instrument was consistent with changes in the law is evidence of vindictiveness.

The Court rejects Mr. French's vindictive prosecution argument as wholly unsupported and frivolous.

### C. Kendall Chase's and Rodney Russell's Limited Joinders of the Malcolm French Motion to Dismiss the Indictment

Although Mr. Chase and Mr. Russell initially joined Mr. French's motion to dismiss, they later retracted their participation in the motion to the extent the motion

18

alleged that the federal prosecutor suborned perjury and to the extent that the motion alleged that the prosecution was vindictive. *Chase Am. Mot.* at 1-2; *Russell Withdrawal* at 1. As Mr. French's motion to dismiss is based on charges of prosecutorial misconduct, either by presenting false testimony or by initiating and maintaining a vindictive prosecution, it is difficult to see what remains of Mr. French's motion to dismiss absent these claims. In short, Mr. Chase and Mr. Russell nominally, but not substantively, joined Mr. French's motion to dismiss indictment, and the Court dismisses the French motion to the extent Mr. Chase and Mr. Russell have joined in it.

## V.   CONCLUSION

The Court DENIES Malcolm French's Motion to Dismiss Indictment (ECF No. 583). The Court also DENIES Rodney Russell's and Kendall Chase's joinder to that motion (ECF Nos. 585, 588).

SO ORDERED.

    /s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2015