UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

**FINAL SENTENCING ORDER**

The Court resolves the remaining sentencing guideline issues in favor of the Government, concluding that two of the Defendants are subject to aggravating role enhancements under United States Sentencing Guideline (U.S.S.G.) § 3B1.1, that neither of these Defendants is entitled to safety valve treatment under U.S.S.G. § 5C1.2, that a third Defendant is not entitled to a downward departure under U.S.S.G. § 5H1.6 for family ties and responsibilities, that a Defendant is not entitled to a downward departure under U.S.S.G. § 5H1.3 for his mental conditions and U.S.S.G. § 5H1.4 for his physical conditions, and that a Defendant is not entitled to a downward departure for public service under U.S.S.G. § 5H1.11.

**I.     BACKGROUND**

    **A.     Procedural History**

On January 24, 2014, a federal jury found Malcolm French, Rodney Russell, and Kendall Chase guilty of several federal crimes involving a conspiracy to manufacture and a conspiracy to distribute marijuana. *Jury Verdict Form* (ECF No. 311); *Superseding Indictment* (ECF No. 187).  The Probation Office (PO) prepared

and revised a Presentence Investigation Report (PSR) on each Defendant. *French PSR*; *Russell PSR*; *Chase PSR*.

On June 2, 2015, the Government filed a sentencing memorandum addressing a number of potential sentencing issues. *Gov't's Consolidated Mem. in Aid of Sentencing* (ECF No. 519) (*Gov't's Mem.*). Each Defendant responded to the Government's memorandum and raised some new issues. On July 30, 2015, July 31, 2015, and August 6, 2015, Mr. French, Mr. Chase and Mr. Russell filed responsive memoranda. *Def. Malcolm French's Mem. in Aid of Sentencing* (ECF No. 551) (*French Mem.*); *Def.'s Corrected Mem. in Aid of Sentencing* (ECF No. 553) (*Chase Mem.*); *Def. Rodney Russell's Sentencing Mem.* (ECF No. 562) (*Russell Mem.*). On August 12, 2015, the Government filed a reply memorandum. *Gov't's Consolidated Reply Mem. in Aid of Sentencing* (ECF No. 571) (*Gov't's Reply*).[1]

On February 3, 2016, Malcolm French filed another sentencing memorandum. *Def. Malcolm French's Suppl. Sentencing Mem.* (ECF No. 608) (*French Suppl. Mem.*). On February 5, 2016, the Government filed another sentencing memorandum. *Gov't's Mem. in Aid of Sentencing* (ECF No. 612) (*Gov't's Suppl. Mem.*). On March 18, 2016, Mr. French filed a second supplementary memorandum addressing a number of issues, including his entitlement to a safety valve reduction. *Def. Malcolm French's*

---

[1] On January 29, 2016, the Government filed a sentencing memorandum on the admissibility of a polygraph examination of Mr. French at the sentencing hearing. *Gov't's Mem. in Aid of Sentencing Regarding Def. French's Polygraph Evid.* (ECF No. 607). On February 8, 2016, Mr. French filed a memorandum on the polygraph issue. *Def. Malcolm French's Mem. of Support [for] Admis. of Polygraph Test Results for Sentencing Purposes* (ECF No. 614). On March 9, 2016, the Government filed another memorandum on a variety of sentencing issues. *Gov't Mem. in Aid of Sentencing* (ECF No. 631). The Court addressed these issues in a separate order. *Sentencing Order on Obstruction of Justice Enhancement* (ECF No. 652).

*Second Suppl. Sentencing Mem.* at 11-12 (ECF No. 635) (*French's Second Suppl. Mem.*). On March 28, 2016, Mr. Russell filed a supplementary memorandum on the safety valve. *Def. Rodney Russell's Resp. to Def. French's Mem. at Doc. 635—Safety Valve* (ECF No. 642) (*Russell Suppl. Mem.*). On March 30, 2016, the Government filed a final memorandum. *Gov't's Mem. in Aid of Sentencing* (ECF No. 644) (*Gov't's Final Mem.*).

In anticipation of the April 21, 2016 sentencing hearing, the Court issued a number of sentencing orders. *Sentencing Order on Drug Quantity* (ECF No. 647); *Sentencing Order on Firearms Enhancement* (ECF No. 648); *Sentencing Order on Obstruction of Justice Enhancement* (ECF No. 652) (*Obstruction Order*). This final order addresses all remaining guideline sentencing issues. The Court will discuss the sentencing analysis under 18 U.S.C. § 3553(a) at the hearing, including the parties' arguments about marijuana as a Schedule I drug.

B.     **Remaining Guidelines Issues**

The parties submitted memoranda concerning the following remaining guideline issues:

(1) Whether Malcolm French and Rodney Russell had aggravating roles in the commission of these offenses pursuant to U.S.S.G. § 3B1.1;

(2) Whether Malcolm French or Rodney Russell are entitled to a safety valve reduction under U.S.S.G. § 5C1.2(a)(1);

(3) Whether Kendall Chase is entitled to a downward departure under U.S.S.G. § 5H1.6 for family ties and responsibilities;

3

(4) Whether Rodney Russell is entitled to a downward departure under U.S.S.G. § 5H1.3 for his mental conditions and § 5H1.4 for his physical conditions; and

(5) Whether Rodney Russell is entitled to a downward departure for public service under U.S.S.G. § 5H1.11.

## II.   THE AGGRAVATING ROLE ENHANCEMENT: MALCOLM FRENCH AND RODNEY RUSSELL—U.S.S.G. § 3B1.1

### A.   The Enhancement

Section 3B1.1 of the guidelines provides:

Based on the defendant's role in the offense, increase the offense level as follows:
>  (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>  (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
>  (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 (U.S. SENTENCING COMM'N 2015) [hereinafter U.S.S.G.].  Comment Four to U.S.S.G. § 3B1.1 states:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling.  Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.  This adjustment

4

does not apply to a defendant who merely suggests committing the offense.

*Id.* cmt. n.4.

### 1. Four-Level Enhancement under § 3B1.1(a)

In *United States v. Arbour*, 559 F.3d 50 (1st Cir. 2009), the First Circuit observed that "[i]n order to invoke § 3B1.1(a), a district court must make a finding as to scope—that the criminal activity involved five or more participants or was otherwise extensive—and a finding as to status—that the defendant acted as an organizer and leader of the criminal activity." *Id.* at 53 (footnote and citation omitted).

Here, neither Mr. French nor Mr. Russell contested the contention that the conspiracy involved five or more participants or was otherwise extensive. The participants included: (1) Malcolm French, (2) Scott MacPherson, (3) Kendall Chase, (4) Rodney Russell, (5) Moises Soto, (6) Miguel Roblero, (7) Abner Perez Morales, (8) Martin Roblero, (9) as many as five unidentified migrant laborers,[2] (10) Robert Berg, and (11) Fai Littman. The "scope" part of the § 3B1.1 determination has been clearly met.

The First Circuit has illuminated the status part of the analysis. *Arbour*, 559 F.3d at 55-57. To qualify for an enhancement under U.S.S.G. § 3B1.1(a), the defendant must have "either organized or led the criminal activity." *Id.* at 55. Reviewing the factors set forth in Comment Four in the guidelines, the *Arbour* Court

---

[2] Miguel Roblero testified that when Mr. Berg picked them up in the woods, there were five other laborers that Mr. Soto had brought to the van. *Partial Tr. of Proceedings, Test. of: Miguel Roblero* 70:2-7 (ECF No. 370).

5

noted that "[t]here need not be proof of each and every factor before a defendant can be termed an organizer or leader." *Id.* (quoting *United States v. Tejada-Beltran*, 50 F.3d 105, 111 (1st Cir. 1995)). "[T]he term leader implies the exercise of some degree of dominance or power in a hierarchy, and also implies the authority to ensure that other persons will heed commands." *Id.* (quoting *Tejada-Beltran*, 50 F.3d at 111). "One may be classified as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity." *Id.* (quoting *Tejada-Beltran*, 50 F.3d at 111). In *Arbour*, the First Circuit clarified that in order to be a leader or organizer, the defendant does not need to have led or organized at least five other participants; the defendant "needs only to have led or organized *one* criminal participant, besides himself of course . . . ." *Id.* at 56 (emphasis in original) (citing U.S.S.G. § 3B1.1 cmt. n.2).

### 2. Three-Level Enhancement under § 3B1.1(b)

In *United States v. Acosta-Colon*, 741 F.3d 179 (1st Cir. 2013), the First Circuit wrote that § 3B1.1(b) analysis "proceeds in a sequence of two steps": first, "the sentencing judge must find that the underlying offense involved five or more persons (including the defendant) or was otherwise extensive"; second, "the judge must find that the defendant managed or supervised one or more of the other participants in that activity." *Id.* at 205 (internal quotation marks and citations omitted). The Court has already taken the first step by establishing that this conspiracy indisputably involved five or more persons. Regarding the second step, the First Circuit has explained that "[a] defendant manages or supervises a person if he exercises control

6

over that person or oversees that person's activities." *United States v. Cruz-Rodriguez*, 541 F.3d 19, 33 n.12 (1st Cir. 2008) (citing *United States v. Cali,* 87 F.3d 571, 578 (1st Cir. 1996)).

    B.    **The PSRs**

        1.    **Malcolm French**

In Malcolm French's PSR, the PO assessed a four-level enhancement for Mr. French's supervisory role. *French PSR* ¶ 40. The PO stated that "the defendant was responsible for recruiting at least seven migrant workers who manufactured and/or harvested marijuana on his behalf." *Id.* Further, it wrote, the defendant "is also considered to have directed the activities of Scott MacPherson, Kendall Chase, Rodney Russell and Moises Soto." *Id.*

        2.    **Rodney Russell**

In Rodney Russell's PSR, the PO assessed a three-level enhancement for Mr. Russell's supervisory role. *Russell PSR* ¶ 40. The PO stated that "the defendant is viewed as a supervisor of approximately seven migrant workers who manufactured and/or harvested marijuana." *Id.* The PO wrote that the conspiracy "also involved the following individuals: Malcolm French, Scott MacPherson, Kendall Chase, Moises Soto, Robert Berg and the defendant, as well as several other individuals who are named in the Offense Conduct section, but have not been charged." *Id.*

    C.    **Discussion**

        1.    **Malcolm French**

7

The Court rejects Mr. French's argument that he was neither a leader nor an organizer of the marijuana grow conspiracy. In its Sentencing Order Imposing Obstruction of Justice Enhancements, the Court described Mr. French's role:

> In sum, the marijuana grow operation was Malcolm French's conspiracy. The marijuana was grown on his land; supplies were purchased through his company; he personally unloaded some of the supplies; he personally sold some of the marijuana; marijuana was cleaned in his warehouse; marijuana was stored in his barn; hiring migrant laborers was his idea; the laborers were hired through his contact; all the important co-conspirators were his long-term friends and associates; and when law enforcement ultimately appeared, the migrant laborers fled and hid overnight in his old friend's barn at his request.

*Obstruction Order* at 24.

The Court's view of Mr. French's role in this conspiracy is summarized by the testimony of Martin Roblero: "[H]e was the one who paid for everything. He was the boss." *Dep. of Martin Roblero* 31:15-17. Mr. Roblero also described Mr. French by referring to the Spanish terms, "patron" and "jefe," terms synonymous with boss, and he testified that in addition to being his boss, Mr. French was the boss of Mr. MacPherson, Mr. Russell, and Mr. Soto. *Id.* 109:4-22.

In short, Mr. French was the boss of the French marijuana conspiracy and merits a four-level enhancement under § 3B1.1(a) for being the leader or organizer of a criminal activity that involved five or more participants.

### 2. Rodney Russell

Mr. Russell's role in the French conspiracy was varied. He joined the conspiracy in late 2006 or early 2007 after it was already underway, and he became a trusted associate. *Russell PSR* ¶ 10.

8

Not all of Mr. Russell's work was supervisory. For example, he helped the migrant workers clean the marijuana, and he and Scott MacPherson packaged the product into Ziploc bags. *Partial Tr. of Proceedings, Test. of: Miguel Roblero* 15:3-11 (ECF No. 370) (*Miguel Roblero Test.*). Mr. Russell, with Mr. French, Mr. MacPherson, Kevin Chase, and Kendall Chase, took the Pro-Mix pallets into the marijuana grow in the woods. *Id.* 24:2-6. Mr. Russell and Mr. MacPherson built the greenhouse for the saplings, *id.* 29:17-25, and helped haul an outbuilding to the marijuana grow site. *Id.* 35:11-36:18. Mr. Russell, along with Mr. French and Mr. MacPherson, also helped build the marijuana plant nests. *Partial Tr. of Proceedings, Test. of: Moises Soto* 22:9-25 (ECF No. 369).

But some of it was. Mr. Russell, along with Mr. French and Mr. MacPherson, showed the migrant laborers how to process the stems and other marijuana waste product, *Miguel Roblero Test.* 18:25-19:9; how to fertilize the marijuana plants, *id.* 31:2-6; and how to cut leaves off marijuana plants. *Id.* 31:7-11. Mr. Russell and Mr. MacPherson transported the migrant laborers to the work site. *Martin Roblero Dep.* 34:16-19. Mr. Russell and Mr. MacPherson would also spend the night at the marijuana grow site. *Id.* 51:17-22. When the police flew over the marijuana grow, Mr. Russell, along with Mr. MacPherson and Mr. French, connected the migrant workers with Mr. Berg's van. *Miguel Roblero Test.* 68:14-69:8; *Martin Roblero Dep.* 58:6-61:10.

Based on his supervision of the migrant laborers, the Court concludes that Rodney Russell merits a three-level aggravating role enhancement. Mr. Russell

9

supervised and managed the activities of at least Miguel and Martin Roblero, as well as other migrant workers, and the second step under § 3B1.1(b) requires only that a defendant "exercise[] control over" a person or "oversee[] that person's activities." *Cruz-Rodriguez*, 541 F.3d at 33 n.12. Mr. Russell clearly did so, and for that reason, the Court will apply the three-level aggravating role enhancement for Mr. Russell under § 3B1.1(b).

### III. SAFETY VALVE: MALCOLM FRENCH AND RODNEY RUSSELL— § 5C1.2

#### A. Overview

Under U.S.S.G. § 5C1.2, a sentencing court may sentence a defendant without regard to any mandatory minimum statutory sentence, and under § 2D1.1(b)(17), a sentencing court may decrease the offense level by two levels, if the defendant meets the § 5C1.2(a)(1)-(5) criteria. Mr. French and Mr. Russell have argued that they are entitled to a safety valve reduction. *French's Second Suppl. Mem.* at 11-12; *Russell Suppl. Mem.* at 1-2. The PSR has not recommended that either Mr. French or Mr. Russell be deemed eligible for safety valve treatment.

#### B. The Law

Section 5C1.2 of the guidelines contains five criteria: (1) the defendant must not have more than one criminal history point, (2) the defendant must not have used violence or credible threats of violence or possess a firearm or other dangerous weapon, (3) the offense did not result in death or serious bodily injury, (4) the defendant was not an organizer, leader, manager, or supervisor, and (5) the

defendant must truthfully provide the government all information and evidence that the defendant has concerning the offense. U.S.S.G. § 5C1.2(a)(1)-(5).

### C. Malcolm French and the Safety Valve

Malcolm French is not entitled to safety valve treatment. He is precluded (1) under U.S.S.G. § 5C1.2(a)(4) because he was the organizer or leader of this conspiracy and (2) under § 5C1.2(a)(5) because he has not truthfully provided the Government all information and evidence that he has concerning the offenses of conviction. *See French PSR* ¶ 40.

### D. Rodney Russell and the Safety Valve

Rodney Russell is not entitled to safety valve treatment. He is precluded (1) under U.S.S.G. § 5C1.2(a)(1) because he has more than one criminal history point, (2) under § 5C1.2(a)(4) because he was the manager or supervisor of this conspiracy, and (3) under § 5C1.2(a)(5) because he has not truthfully provided the Government all information and evidence that he has concerning the offenses of conviction. *See Russell PSR* ¶¶ 40, 59, 60.

In Mr. Russell's PSR, his criminal history is calculated as a criminal history category II based on two criminal history points as a result of his convictions for two counts of false statement relating to health care matters in this Court. *Russell PSR* ¶ 59. This disqualifies him under § 5C1.2(a)(1). Although Mr. Russell argues that his two criminal history points do not bar application of the safety valve, he is wrong. *United States v. Hunt*, 503 F.3d 34, 37 (1st Cir. 2007) ("Hunt has two criminal history points. The plain language of the Sentencing Guidelines precludes him from

11

receiving the benefit of the safety valve regardless of whether the district court saw fit to designate his criminal history category as I by departing downward") (citations omitted); *see also United States v. Stevens*, 300 F. Supp. 2d 203, 205 (D. Me. 2004) ("Under § 5C1.2(a)(1), the safety valve is available only when the defendant 'does not have more than 1 criminal history point, *as determined under the sentencing guidelines*'") (emphasis in original) (quoting U.S.S.G. 5C1.2(a)(1)).

## IV.   FAMILY TIES AND RESPONSIBILITIES: KENDALL CHASE—§ 5H1.6

### A.   An Overview

In his sentencing memorandum, Mr. Chase argues that he is entitled to a downward departure under U.S.S.G. § 5H1.6, Family Ties and Responsibilities. *Chase Mem.* at 12-14.  The argument is based largely on a series of three serious medical issues that Mr. Chase's wife, Janeane, endured since being diagnosed with multiple sclerosis in 2009.  *Id.*  Following her multiple sclerosis diagnosis, Ms. Chase was involved in a serious automobile accident on August 1, 2010 and sustained multiple facial fractures, a left rib fracture, a collapsed lung on the left, and fractures of the right femur, and left radius and ulna.  *Id.* Attach. 1 *Medical Records* at 1 (ECF No. 553) (*Medical Records*).  She underwent ten surgeries following the accident. *Chase Mem.* at 9.  Then on January 17, 2014, Ms. Chase was diagnosed with Uveitis and Cystoid Macular Edema.  *Medical Records* at 11-18.  The PSR has not recommended Mr. Chase be considered eligible for a family ties and responsibilities downward departure.

### B.   The Law

>Section 5H1.6 of the guidelines provides:
>
>In sentencing a defendant convicted of an offense other than an offense described in the following paragraph, family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.

U.S.S.G. § 5H1.6. The application note substantially expands upon this provision:

>**(A)** In General.  In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:
>>**(i)** The seriousness of the offense.
>>**(ii)** The involvement in the offense, if any, of members of the defendant's family.
>>**(iii)** The danger, if any, to members of the defendant's family as a result of the offense.
>
>**(B)** Departures Based on Loss of Caretaking or Financial Support.  A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>>**(i)** The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>>**(ii)** The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>>**(iii)** The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>>**(iv)** The departure effectively will address the loss of caretaking or financial support.

*Id.* cmt. n.1.

The First Circuit has observed that "[d]ownward departures for exceptional family circumstances are rare; they are only appropriate if the defendant provides 'irreplaceable or otherwise extraordinary' care." *United States v. Núñez-Polanco*, 428 Fed. App'x 13, 15 (1st Cir. 2011) (quoting *United States v. Roselli*, 366 F.3d 58, 68 (1st Cir. 2004)). Although this standard is rarely met, it is not impossible to do so. *United States v. Roselli*, 366 F.3d 58, 62-63 (1st Cir. 2004) (affirming a downward departure for a defendant where two of his four children suffered from cystic fibrosis and his wife suffered from fibromyalgia, preventing her from performing simple tasks); *United States v. Sclamo*, 997 F.2d 970, 972-74 (1st Cir. 1993) (also affirming downward departure under U.S.S.G. § 5H1.6).

C. **Familial Ties and Responsibilities and Kendall Chase**

This Court is of course concerned about Ms. Chase and her medical troubles. However, the Court notes that Ms. Chase herself has written the Court that she was able to return to teaching five months after the motor vehicle accident. *Chase Mem.* Attach. 2 *Character Letters* at 9 (ECF No. 553). The Court also notes that Mr. Chase comes from a large and close family, many of whom are nearby.

Based on what is before the Court, it is not convinced that Ms. Chase's current medical conditions require Mr. Chase's physical presence. Nor is the Court convinced that the surrounding family members and friends would be unable to provide Ms. Chase the care she requires. "A defendant's incarceration will invariably cause hardship to his family." *United States v. Louis*, 300 F.3d 78, 82 (1st Cir. 2002). The

Court concludes that Mr. Chase's "circumstances . . . are unfortunate but not extraordinary." *Núñez-Polanco*, 428 Fed. App'x at 15.

### V. PHYSICAL AND MENTAL CONDITION: RODNEY RUSSELL— §§ 5H1.3 & 5H1.4

#### A. Overview

Although the PO reviewed Mr. Russell's medical conditions, the PSR does not recommend that Mr. Russell be deemed eligible for a § 5H1.4 downward departure. In his memorandum, Mr. Russell relies upon the description of his physical and mental problems in requesting a downward departure under § 5H1.4.[3] *Russell Mem.* at 6.

The PRS describes Mr. Russell as having had a problem with sleep apnea that had required his use of a continuous positive airway pressure machine (CPAP) before surgeries in 2003 and 2009. *Russell PSR* ¶ 68. There is no mention of any ongoing sleep apnea problem following the surgery. *Id.*

The PSR states that Mr. Russell has been treated for high cholesterol and chronic back pain. *Id.* Mr. Russell reported that he has been in almost constant back pain, worse in the morning and improving during the day. *Id.* In 2009, Mr. Russell underwent a steroid injection, but it did not improve his symptoms. *Id.* In 2013, he was diagnosed with spinal stenosis and degenerative disc disease, and he had been

---

[3] Mr. Russell does not mention § 5H1.3 as a ground for downward departure, but he does mention his mental infirmities as a possible basis for such a departure and mental infirmities are covered by § 5H1.3 of the guidelines. *Russell Mem.* at 6. The Court considered Mr. Russell's argument under both guideline sections.

prescribed Gabapentin to alleviate the nerve pain associated with his back problems. *Id.*

The PSR notes that Mr. Russell fell off a ladder in 2009 and broke his elbow in two places; however, he has recovered from that incident. *Id.*

Turning to his mental and emotional health, the PSR says that Dr. Saunders has treated Mr. Russell for post-traumatic stress disorder (PTSD) since 1999. *Id.* ¶ 70. The problems began with his unemployment and his wife having an affair with his brother. *Id.* His first wife had also hit their son with a motor vehicle, causing him injury, and had set their house on fire. *Id.* Mr. Russell stopped the treatment for two years but resumed in the fall of 2009. *Id.* Mr. Russell was depressed because he had divorced his second wife due to her alcoholism and had been fired from another job. *Id.* Dr. Saunders diagnosed PTSD and major depressive disorder. *Id.* He is currently prescribed Citalopram for these mental and emotional conditions.

**B.    Law**

Section 5H1.3 of the guidelines provides:

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.

U.S.S.G. § 5H1.3. Section 5H1.4 of the guidelines provides:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the

>   case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

*Id.* § 5H1.4. The First Circuit has written that health is "not ordinarily [a] relevant sentencing factor." *United States v. Candelaria-Silva*, 166 F.3d 19, 41 (1st Cir. 1999). A defendant's mental or physical condition are "discouraged" departures under the guidelines. *United States v. Derbes*, 369 F.3d 579, 580-81 (1st Cir. 2004).

Emphasizing the requirement that the physical infirmity be "*extraordinary*" to merit a downward departure, the First Circuit has explained that a health-related departure might be justified in the unusual case where the defendant "would not get, or was at least unlikely to get, adequate treatment in prison." *United States v. Hoey*, 508 F.3d 687, 693 (1st Cir. 2007) (quoting *Derbes*, 369 F.3d at 582).

Regarding a downward departure for a mental condition, the First Circuit has written that to make a downward departure based upon a defendant's mental condition, "the sentencing court must first make a finding that the mental condition is extraordinary or atypical." *United States v. Maldonardo-Montalvo*, 356 F.3d 65, 74 (1st Cir. 2003) (citations omitted). In *Maldonardo-Montalvo*, for example, the First Circuit reversed a sentencing court's determination that the defendant, who suffered from major or severe depression, was entitled to a § 5H1.3 downward departure. *Id.* at 74-75. The First Circuit noted that the defendant had improved with medication and that he had denied suicidal ideation. *Id.* at 75.

### C. Rodney Russell and Mental and Physical Infirmity

The Court easily concludes that Mr. Russell is not entitled to a downward departure as a result of his mental and physical conditions. The Court is not clear

17

that Mr. Russell continues to suffer from sleep apnea following his surgeries. In any event, sleep apnea, a bad back, PTSD, and a major depressive disorder—even when combined—are unfortunate but not extraordinary or unusual conditions, and Mr. Russell has offered no evidence to suggest that he could not be adequately treated for these conditions within the Bureau of Prisons in the ordinary course.

## VI.   PUBLIC SERVICE: RODNEY RUSSELL—§ 5H1.11

### A.   Overview

The PO did not recommend a downward departure for Mr. Russell based on his civil, charitable, or public service activities. In his memorandum, Mr. Russell mentions his work as a leader of the Youth Choir at St. Francis Xavier & Paul the Apostle Church in Milo, Maine, as a volunteer for St. Joseph Hospital in Bangor, Maine, and as a volunteer for the Pope Memorial Humane Society of Knox County in Thomaston, Maine. *Russell Mem.* at 7. The PSR mentions his volunteer work for the Pope Humane Society in 2012 and 2013 and quotes its records as reflecting that Mr. Russell was "an excellent worker and an important part of our volunteer crew." *Russell PSR* ¶ 74.

### B.   The Law

Section 5H1.11 of the guidelines provides: "Civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11. The First Circuit has observed that "public service . . . is a permitted but discouraged ground for departure." *United States v. Cacho-Bonilla*, 404 F.3d 84, 95 (1st Cir. 2005)

18

(citations omitted). In *United States v. DeMasi*, 40 F.3d 1306 (1st Cir. 1994), the First Circuit framed the question as to whether the defendant's record of good works "stands out from the crowd." *Id.* at 1324.

### C. Public Service and Rodney Russell

Though commendable, the Court does not consider Mr. Russell's civic, charitable or public service to stand out from the crowd.

## VII. CONCLUSION

The Court resolves the remaining guidelines issues in this case as follows:

(1) The Court concludes that Malcolm French is properly subject to a four-level leadership or organizer role enhancement under U.S.S.G. § 3B1.1(a);

(2) The Court concludes that Rodney Russell is properly subject to a three-level supervisor or manager role enhancement under U.S.S.G. § 3B1.1(b);

(3) The Court concludes that neither Malcolm French nor Rodney Russell is entitled to safety valve treatment under U.S.S.G. § 5C1.2(a)(1);

(4) The Court concludes that Kendall Chase is not entitled to a downward departure under U.S.S.G. § 5H1.6 for family ties and responsibilities;

(5) The Court concludes that Rodney Russell is not entitled to a downward departure under U.S.S.G. § 5H1.3 or § 5H1.4 for his mental or physical conditions; and

(6) The Court concludes that Rodney Russell is not entitled to a downward departure for public service under U.S.S.G. § 5H1.11.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2016