UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

**ORDER ON JUROR RIGHT TO COUNSEL**

Following the Court of Appeals for the First Circuit's remand to this Court for an evidentiary hearing concerning Juror 86's responses to a jury questionnaire and her motivation behind those responses, the Court, over the objection of the Defendants, is going to appoint counsel to represent Juror 86. The Court concludes that based on the record now before it, including the appellate court's opinion, there is some potential that Juror 86 deliberately lied during the voir dire process and for that reason alone, she should be provided with counsel. In addition, the Court favors the appointment of counsel for practical reasons.

**I.  BACKGROUND**

On October 10, 2018, the Court of Appeals for the First Circuit issued its mandate, remanding the Malcolm French and Rodney Russell cases to this Court "for further proceedings" on their motion for new trial. *United States v. French*, 904 F.3d 111 (1st Cir. 2018). On November 5, 2018, the Court denied the Defendants' motion for recusal. *United States v. French*, No. 1:12-cr-00160-JAW, 2018 U.S. Dist. LEXIS 188659 (D. Me. Nov. 5, 2018). On November 20, 2018, the Court held a conference of

counsel to determine how best to respond to the First Circuit's remand. *Min. Entry* (ECF No. 802).

## II. LEGAL ISSUES

### A. Remanded for an Evidentiary Hearing

The First Circuit in general remanded the case "to investigate the claim," indicating that "[t]he type of investigation the district court chooses to conduct is within the district court's discretion; it may hold a formal evidentiary hearing, but depending on the circumstances, such a hearing may not be required." *French*, 904 F.3d at 117. Significantly, the *French* Court also wrote:

> Because we are vacating and remanding <u>for an evidentiary hearing</u> concerning the possible bias of Juror 86, we could defer review of the drug quantity issue . . . .

*Id.* at 122 (emphasis supplied). This Court views the First Circuit's language as requiring on remand that the Court hold an evidentiary hearing. Under the law, an evidentiary hearing is a hearing "to try issues of fact." *Townsend v. Sain*, 372 U.S. 293, 309 (1963). The term 'evidentiary hearing' defines itself. A hearing in a court context, is a "judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying." BRYAN A. GARNER, BLACK'S LAW DICTIONARY at 836 (10th ed. 2014). The First Circuit's use of adjective, "evidentiary," emphasizes that the hearing on remand must include the taking of evidence, and under basic concepts of due process, an evidentiary hearing includes placing witnesses under oath and allowing cross-examination. *Id.*

2

("evidentiary hearing" means "[a] hearing at which evidence is presented, as opposed to a hearing at which only legal argument is presented").

In *United States v. Sampson*, 724 F.3d 150 (1st Cir. 2013), the district court convened what the First Circuit described as an "evidentiary hearing" to resolve a question of juror misconduct. *Id.* at 156. The *Sampson* Court refers to the juror's presentation at the evidentiary hearing as testimony. *Id.* at 163 ("Juror C testified"). Furthermore, the district court allowed defense counsel to cross-examine the juror. *Id.* ("When defense counsel attempted to probe her lies about P, she resisted that line of inquiry").

Although, as the First Circuit noted, in many cases of juror misconduct it is appropriate for the district court to convene something less than an evidentiary hearing to investigate claims of juror misconduct, *French*, 904 F.3d at 117, the Court concludes, consistent with its interpretation of the First Circuit directive in this case, that it should convene an evidentiary hearing to resolve the issue of juror misconduct on remand.

B.     **The Need for the Testimony of Juror 86**

The next question is whether the evidentiary hearing that the First Circuit ordered contemplates the sworn testimony of Juror 86. On this issue, the First Circuit observed that when a party claims that a juror failed to respond accurately to a question asked of prospective jurors prior to selection as a juror, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for

3

a challenge for cause." *French*, 904 F.3d at 116 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (emphasis in *McDonough*)). The *French* Court observed that "[t]he outcome of this inquiry depends on whether a reasonable judge, armed with the information that the dishonest juror failed to disclose <u>and the reason behind the juror's dishonesty</u>, would [have struck the juror for cause]." *Id.* (quoting *Sampson*, 724 F.2d at 165-66 (emphasis in *French*)). The First Circuit wrote that "the court may consider factors including but not limited to 'the juror's interpersonal relationships; the juror's ability to separate her emotions from her duties; the similarity between the juror's experiences and important facts presented at trial; the scope and severity of the juror's dishonesty; and the juror's motive for lying.'" *Id.* (quoting *Sampson*, 724 F.3d at 166). The First Circuit emphasized that "the ultimate inquiry under *Sampson* requires that the court consider 'the reason behind the juror's dishonesty.'" *Id.* at 118 (quoting *Sampson*, 165-55).

Although the Court remains open to the suggestions of the parties as to how to resolve the issue of Juror 86's motivation without calling her as a witness, it anticipates that her testimony will be the central focus of the evidentiary hearing on remand. *Id.* at 118 ("The only way to tell if the passage of time would have erased Juror 86's memory of events would be to ask her to recall these events, something the district court declined to do").

C. **Appointment of Counsel for Juror 86**

The Government and the Defendants now appear to agree with the Court's conclusion about the need for an evidentiary hearing in which Juror 86 is called as a

4

witness.[1]  The parties disagree, however, on whether the Court should appoint counsel to represent Juror 86 in anticipation of her testimony.  *Compare Letter from Att'y Thomas F. Hallett and Att'y Jamesa J. Drake to Hon. John A. Woodcock, Jr.* (Nov. 23, 2018) (ECF No. 805) (*Hallett Letter*) and *Letter from Att'y William S. Maddox to Hon. John A. [W]oodcock, Jr.* (Nov. 23, 2018) (ECF No. 806) (*Maddox Letter*); *with Letter from Assistant U.S. Att'ys. Joel B. Casey and F. Todd Lowell to Hon. John Woodcock, Jr.* (ECF No. 807) (*Gov't Letter*).

### 1. The Defendants' Position

The Defendants worry that if counsel is appointed to represent Juror 86, Juror 86 will invoke her Fifth Amendment right to remain silent and doing so will "doom at the outset this Court's task."  *Hallett Letter* at 1; *Maddox Letter* at 1 ("deprives the Court of it[]s truth-telling function").  Attorney Hallett points out that in *United States v. Fuentes*, No. 2:12-cr-50-DBH, 2013 U.S. Dist. LEXIS 115459 (D. Me. Aug. 15, 2013), Judge Hornby of this district conducted an interview "in camera but on the record" and that none of the persons interviewed, including the juror, was placed under oath.  *Id.* at *3, n.3.  Regarding the juror, Judge Hornby explained that he "feared that legal proceeding formalities would result in his refusing to answer questions."  *Id.* at n.3.  Judge Hornby wrote that his "focus throughout was on obtaining all the available information to assess the impartiality of the jury for the

---

[1]  Initially, the Government suggested a less confrontational chambers meeting with the juror, where she would not be placed under oath and the Court would ask the questions.  But in light of the First Circuit's direct reference to evidentiary hearing, the parties appear to be reconciled to a testimonial hearing where the juror will be placed under oath and be subject to cross-examination.

5

trial just ended, not what might be available for further proceedings against the individuals being interviewed." *Id.*

Indeed, Mr. French assumes that if Juror 86 is represented by counsel, she will take the Fifth Amendment and that if she does so, the motion for new trial will necessarily be denied. *Hallett Letter* at 1 ("Any reasonably competent defense counsel armed with the information filed in this matter, and the First Circuit's opinion, will advise her client to assert Fifth Amendment protection. This Court has already suggested that assertion of the Fifth Amendment will lead to the defendant failing to establish bias sufficient to excuse the juror for cause").

Mr. French is skeptical about the impact of counsel on the truth-seeking process. He is concerned that an attorney will deprive the Court and the parties of "the opportunity to assess [the Juror's] authentic reaction" and that he is "entitled to answers that have not been filtered or coached, and any attorney who is appointed to represent Juror 86 will necessarily have to prepare her for her testimony." *Id.* at 3. He asserts that "nothing at all suggests that Juror 86 is a criminal, or has committed a crime." *Id.* Finally, he worries that the Court is requiring newly-appointed counsel to report back to the Court and the parties about confidential communications with Juror 86. *Id.* Instead, Mr. French suggests that the Court should have counsel "available to aid Juror 86 in court, should she request assistance." *Id.*

### 2. The Government's Position

The Government holds the view that the Court should appoint counsel to represent Juror 86. *Gov't Letter* at 1. It cites caselaw in which other courts have

6

appointed counsel to represent jurors. *Id.* It proposes that a lawyer would be helpful in explaining to the juror why, after five years, she was being summoned back into court, which would "allow Juror # 86 to think back on the events leading up to her completion of the questionnaire and aid her in providing accurate answers." *Id.* It rejects the notion that Juror 86 would "use such advance notice to concoct a false story." *Id.*

The Government is not certain that counsel would in fact advise Juror 86 to take the Fifth Amendment and suggests that consultation with a lawyer would avoid having Juror 86 "erroneously invoking her rights based on a misunderstanding of whether the rights are implicated." *Id.* at 2. The Government notes that counsel could impress upon Juror 86 the importance of an oath and would provide a point of contact between the Court and Juror 86. *Id.* It worries about "ambushing Juror #86 with questions about events that occurred long ago, without the benefit of experienced counsel." *Id.*

### 3. Discussion

The Court concludes that it will appoint counsel to represent Juror 86. The threshold conundrum is how Juror 86 is to be made aware of the controversy surrounding her voir dire responses. Her initial responses date back to 2013 and the voir dire itself occurred in January 2014, and there is no suggestion she has thought about her answers for more than four or five years.

Exactly who is going to contact Juror 86 after this length of time is problematic. Among the concerns is that Juror 86 must be apprised of the issue before the Court

7

without scaring her into silence and without influencing her responses by the contents of the communication. None of the lawyers suggests that it would be appropriate for them to contact her, either individually or as a group. Nor would it seem appropriate for the first contact to be from the United States Marshal's Office or another person authorized to serve subpoenas. One alternative would be for the Clerk's Office to write her a letter, asking her to contact the Office, but the contents of any letter would have to be very carefully considered to make certain it was neutral and accurate. Furthermore, any Clerk's Office letter would likely provoke a response from the juror, including contacting the Clerk's Office for more information, and the Clerk's Office would not be able to respond in anything but generalities.

The advantages of counsel making the first contact are considerable. The defense lawyer will immediately grasp the legal issues presented by the motion for new trial and the First Circuit opinion and will be able to explain to Juror 86 what is at stake in the evidentiary hearing. The lawyer will also be able to refresh Juror 86's recollection about her responses to the jury questionnaire. This is not a simple matter. The focus is what motivated Juror 86 in her responses then, not now. Neither the Court nor counsel knows what has happened in Juror 86's life over the last four to five years, what has happened in her son's life over the same time, and whether she can readily place her mind back to the day she completed the questionnaire, accurately reflect what she was thinking then, and then place her mind back to the day of jury selection and do the same thing. An experienced lawyer should be of great assistance to Juror 86 in explaining the issues before the Court and in so doing,

8

should assist the Court and the parties in responding to the First Circuit's order on remand.

The Court is not nearly as cynical about the role of defense counsel for Juror 86 as defense counsel for the Defendants appear to be. The Court's experience with defense counsel is that they more often facilitate than obstruct the proper administration of justice.

The Defendants' proposal that the Court should have counsel ready in the courtroom to represent Juror 86 should she ask for counsel is, in the Court's view, unworkable. It places the burden on Juror 86 to know whether and when to request counsel and the Court is perplexed how counsel could serve as an "on-call" attorney, without actually representing her, and yet properly represent Juror 86 if called upon to do so.

Juror 86 may assert her Fifth Amendment right to remain silent. Deliberately lying during voir dire is a crime. *Order Denying Mot. for New Trial* at 48 (ECF No. 734) (*New Trial Order*); *United States v. Colombo*, 869 F.2d 146, 151 (2nd Cir. 1989) ("Knowingly lying during the *voir dire* ,. . . subjected the juror to possible criminal contempt pursuant to 18 U.S.C. § 401"). Moreover, the *French* Court wrote:

> Here, the defendants came forward with factual information fairly establishing that Juror 86 likely gave an inaccurate answer to question 3 on the written questionnaire. Further, the uncontested facts submitted by the defendants also made it quite likely - - though not certain - - that the juror's inaccuracy was knowing.

*French*, 904 F.3d at 117. The First Circuit's comments come reasonably close to saying that, based on the record before it, it is more likely than not that Juror 86

9

knowingly lied during voir dire, a potential crime. In light of the *French* Court's conclusions, Juror 86 could decide to remain silent and, if she did, she would only be asserting her rights under the United States Constitution's Bill of Rights, something neither wrong nor inappropriate in a federal court.

Attorney Hallett's letter says both that "[a]ny reasonably competent defense counsel armed with the information filed in this matter and the First Circuit's opinion, will advise her client to assert Fifth Amendment protection" and that "nothing at all suggests that Juror 86 is a criminal, or has committed a crime." *Hallett Letter* at 1-2.[2] As Attorney Hallett's considered ambiguity suggests, it is not a foregone conclusion that Juror 86 will assert her Fifth Amendment rights. There could be an innocent explanation for her response to question 3 of the jury questionnaire or other circumstances may allow her testimony. In addition, there may be some evidence acceptable to the parties and the Court that falls short of a full evidentiary hearing. *United States v. LaRoque*, No. 4:12-cr-99-1H, 2014 U.S. Dist. LEXIS 21170, at *7 (E.D.N.C. Feb. 20, 2014) (noting that the defendant submitted an affidavit from Juror number three in support of the motion for new trial).

The Court is deeply respectful of Judge Hornby and has no quarrel with his decision in *Fuentes* not to place the witnesses, including the juror, under oath and not to provide counsel for the juror. *Fuentes*, 2013 U.S. Dist. LEXIS 115459. But the situation in *Fuentes* was markedly different than the situation here. The juror's

---

[2] In Mr. French's motion to recuse, Mr. French described Juror 86 as "potentially mendacious," and wrote that the Court must investigate her "apparent mendacity." *Def. Malcolm French's Mot. to Recuse Judge Woodcock* at 6-7, 8(ECF No. 787). "Mendacity" denotes "deceptiveness or lying." BRYAN A. GARNER, GARNER'S MODERN AM. USAGE AT 532 (3rd ed, 2009).

10

statement of racial bias against the defendants was disgraceful, but there was no suggestion that he had committed a crime by expressing his prejudice. *Id.* In fact, Judge Hornby found that despite the juror's ethnic slur, the juror had not lied during voir dire. *Id.* at *17-19. Here, as just noted, it is at least possible that Juror 86 could be prosecuted for contempt of court if she deliberately lied during the voir dire.

The Defendants are concerned that the Court's prior denial of their motion for new trial contains language that suggests if Juror 86 were to assert the Fifth Amendment, it would doom their motion for new trial. *Hallett Letter* at 1 ("This Court has already suggested that assertion of the Fifth Amendment will lead to the defendant failing to establish bias sufficient to excuse the juror for cause. Defendant strenuously disagrees that the invocation of Juror 86's Fifth Amendment privilege inures to defendant's detriment"). It is true in its denial of the motion for new trial, the Court wrote that there were three possibilities, (1) that Juror 86 took the Fifth Amendment, (2) that she presented an innocent and acceptable explanation for her responses, or (3) that she looked "bewildered, expressed embarrassment, and equivocated." *New Trial Order* at 48. If the third alternative occurred, the Court concluded that "the Court and the parties would be no better off, expect the Defendants would not have sustained their *Sampson* burden." *Id.*

But the First Circuit vacated the Court's November 16, 2016 order on the motion for new trial. *French*, 904 F.3d at 125 ("We vacate the order denying motion for new trial") (emphasis in original). The *French* Court also wrote, based on the

11

record before it, not only did Juror 86 give inaccurate information, but also that she likely did so knowingly. *Id.* at 117.

This Court owes its allegiance to the First Circuit's conclusion, although it differs from this Court's view of the same record; the First Circuit opinion eclipses this Court's assessment. This being the case, if no additional evidence is brought to bear, this Court will not be bound by its prior conclusion that—without further evidence—the Defendants would not have sustained their *Sampson* burden. In fact, based on the First Circuit opinion, the Government, not the Defendants, would appear to be in greater jeopardy if the record stays as it now is. However, the Court need not rule on something that has not occurred and, if it does occur, the Court will seek the guidance of counsel before issuing a final ruling on the motion for new trial.

Finally, the Court agrees with the Government that in similar situations, some courts have appointed counsel for the allegedly misbehaving juror. *United States v. Lawson*, 677 F.3d 629, 640 n.13 (4th Cir. 2012) ("In light of the potential for contempt sanctions, the district court appointed counsel to advise Juror 177 whether he should testify at the hearing"); *United States v. Nix*, 256 F. Supp. 3d 272, 275 (W.D.N.Y. 2017) ("[T]he Court indicated that it would hold an evidentiary hearing on the issue of Juror No. 3's alleged bias. At a subsequent appearance on May 25, 2017, Juror No. 3 appeared and was appointed counsel. . .."); *United States v. Ippolito*, 313 F. Supp. 2d 1310, 1312 (M.D. Fl. 2003) ("I appointed counsel for Juror 505 and summoned him to a hearing at which every party was permitted examination"). By contrast, the Defendants have pointed to no case where a court denied counsel to a potentially

misbehaving juror who was being called to testify under oath about the alleged misbehavior.

D. **Attorney Hallett's Additional Concerns**

In his letter, Attorney Hallett was concerned that the Court was going to require defense counsel for Juror 86 to "report back to this Court about the nature of his or her conversation with Juror 86 without disclosing privileged information. And, by reporting back, and waiving privilege, Juror 86's attorney becomes a potential witness in this case." *Hallett Letter* at 3. This worry is ahead of itself. The Court suggested that after counsel was appointed and had consulted with Juror 86, her lawyer could inform the Court and the parties whether she was likely to assert the Fifth Amendment. *United States v. Innamorati*, 996 F.2d 456, 474 (1st Cir. 1993) (invocation of the Fifth Amendment renders a witness "unavailable" for the purpose of exceptions to the Rule Against Hearsay). If the Court and the parties learn that if called to an evidentiary hearing, Juror 86 would likely assert the Fifth Amendment, the Court would convene a conference of counsel, including Juror 86's attorney, and discuss the next steps.

Attorney Hallett need not be concerned about Juror 86's counsel's attorney-client privilege, a privilege that Juror 86's lawyer could assert on her behalf. The Court is well aware of Federal Rule of Evidence 501 and the attorney-client privilege, and of course, the Court would never contemplate forcing Juror 86's counsel to reveal privileged client information. *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (the attorney-client privilege "is one of the oldest recognized privileges for

13

confidential communications"). During the November 20, 2018 conference of counsel, in considering what might happen, the Court only optimistically mused about the possibility that Juror 86's attorney might make a proffer that could satisfy the Court and the parties about Juror 86's motivation in answering question 3 as she did. But the Court did not intend to imply, if it did, that it would require Juror 86's attorney to reveal client confidences.

## III. CONCLUSION

The Court will appoint counsel to represent Juror 86 in any proceedings involving Defendant Malcolm French's and Rodney Russell's motion for new trial, including any evidentiary hearing held pursuant to the First Circuit remand order. The Court's appointment order will include an order that releases to Juror 86's counsel the juror information about Juror 86, including her initial juror response, which includes her personal contact information, and her incomplete questionnaire. Juror 86 is not required to accept court-appointed counsel; she may be more comfortable paying her own lawyer to represent her, requesting the Court to pay her own lawyer, or she may decline representation. Once counsel has been appointed, has become familiarized with the case, and has contacted and met with Juror 86, the Court will ask Juror 86's attorney to contact the Court and the Court will convene another conference of counsel.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 29th day of November, 2018