UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

**ORDER IN ANTICIPATION OF EVIDENTIARY HEARING**

Following the Court of Appeals for the First Circuit's remand to this Court for an evidentiary hearing regarding Juror 86's responses to a jury questionnaire and her motivation behind those responses, the Court clarifies certain issues for purposes of the evidentiary hearing now scheduled for February 1, 2019.

## I.    BACKGROUND

On October 10, 2018, the Court of Appeals for the First Circuit issued its mandate, remanding the Malcolm French and Rodney Russell cases to this Court "for further proceedings" on their motion for new trial. *United States v. French*, 904 F.3d 111, 125 (1st Cir. 2018). On November 5, 2018, the Court denied the Defendants' motion for recusal. *United States v. French*, No. 1:12-cr-00160-JAW, 2018 U.S. Dist. LEXIS 188659 (D. Me. Nov. 5, 2018). On November 20, 2018, the Court held a conference of counsel to determine how best to respond to the First Circuit's remand. *Min. Entry* (ECF No. 802). After discussion with counsel, the Court concluded that Juror 86 should be appointed counsel, *Order on Juror Right to Counsel* (ECF No. 808) (*Order on Right to Counsel*) and appointed Federal Defender David Beneman as counsel for Juror 86. On January 14, 2018, the Court held another conference of

counsel to discuss the evidentiary hearing. *Min. Entry* (ECF No. 815). During the conference, after consulting with counsel, the Court scheduled the evidentiary hearing for February 1, 2018. *Min. Entry* (ECF No. 815). The Court also resolved several issues, which are reflected in this Order.

## II. DISCUSSION

### A. Issues to be Resolved Through the Testimony of Juror 86

In its opinion dated September 17, 2018, the First Circuit discussed the issues that the Court must resolve on remand. *United States v. French*, 904 F.3d 111, 116-17 (1st Cir. 2018). "To obtain a new trial based on a juror's failure to respond accurately to questions asked of prospective jurors prior to their selection to sit as jurors, 'a party must first demonstrate that a juror failed to answer honestly a material question on <u>voir dire</u>, and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Id.* at 116 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)) (emphasis in original). These are, therefore, the two overriding issues to be resolved at the evidentiary hearing: (1) did Juror 86 fail to honestly answer a material question; and (2) would a correct response have provided a basis for a challenge for cause. On the second question, the First Circuit explained further that "'[t]he outcome of this inquiry depends on whether a reasonable judge, armed with the information that the dishonest juror failed to disclose <u>and the reason behind the juror's dishonesty</u>, would [have struck the juror for cause]." *Id.* (quoting *Sampson v. United States*, 724 F.3d 150, 165-66 (1st Cir. 2013)) (emphasis in *French*). The First Circuit wrote that a court

2

may consider such factors as "the juror's interpersonal relationships; the juror's ability to separate her emotions from her duties; the similarity between the juror's experiences and important facts presented at trial; the scope and severity of the juror's dishonesty; and the juror's motive for lying." *Id.* (quoting *Sampson*, 724 F.3d at 166).

There is another possibility, namely that Juror 86's responses were "honest, but mistaken." *Sampson*, 724 F.3d at 164 n.8. If so, the First Circuit has written that "in the absence of dishonesty, post-trial relief, if available at all, will require a more flagrant showing of juror bias."[1] *Id.* In *Sampson*, the First Circuit observed that the United States Supreme Court concluded in *McDonough* that a "mistaken, though honest," response did not require a new trial. *Id.* at 164 (quoting *McDonough*, 464 U.S. at 555).

## B.      Burden of Proof

The Defendants Malcolm French and Rodney Russell bear the burden of proof on these issues. *Id.* at 117 (discussing the showing "that a defendant must make to obtain a new trial").

## C.      Confidentiality Issues

The Court discussed the need for confidentiality about the juror's name and her son's name. At one point the Government argued that the evidentiary hearing

---

[1]      There has been no suggestion that a third category of bias, "implied bias," applies here. In a concurrence, Justice O'Connor described "some extreme situations that would justify a finding of implied bias." *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982). "Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.* at 222.

itself should be sealed, but the Court rejected this contention based on its understanding of the public right of access to the courts, particularly to criminal proceedings. *United States v. Kravetz*. 706 F.3d 47 (1st Cir. 2013).

The Court suggested that counsel agree to refer to the juror as "Juror 86" and present a stipulation to the Court, which the Court would seal, confirming that the person who appears to testify on February 1, 2019 is Juror 86. The Court also suggested that counsel treat Juror 86's son's name as confidential, especially since he was not responsible for whatever happened during voir dire. Counsel agreed to do so.

### D.     Stipulations

The Court urged counsel to enter into whatever stipulations would narrow the issues. For example, counsel should be able to stipulate that Juror 86 is the mother of a son who had been convicted of multiple marijuana and other drug charges. Also, counsel should be able to agree on the status of Juror 86's son's criminal record, both as of the date she completed the questionnaire in the fall of 2013, and at the time of jury voir dire on January 8, 2014. The Court urged counsel to think about and attempt to stipulate to whatever facts are not in dispute.

### E.     Son's Criminal Record

The Court acknowledged that counsel might wish to have Juror 86's son's actual criminal record available to question Juror 86. If so, the Court reminded counsel that the son's criminal record should be redacted to eliminate personal identifiers. *See* FED. R. CRIM. P. 49.1(a).

### F.  Jury Deliberation Process

The Court discussed with counsel not only those issues that would be before the Court, but also those that would not.  Under Federal Rule of Evidence 606(b), a juror "may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."  Counsel agreed that they would not pursue such questioning.

### G.  Sequencing of Questioning

At the conference, the Court discussed various alternatives for the questioning of Juror 86.  The Court acknowledged that in some cases, the judge will conduct the initial examination of the juror.  *See United States v. Fuentes*, No. 2:12-cr-50-DBH, 2013 U.S. Dist. LEXIS 115459 (D. Me. Aug. 15, 2013).  For this case, the Court is of the view that it would be better if counsel performed the questioning, largely because the Court is required to act as the factfinder and the Court sees as potentially problematic the mixing the roles of questioner and factfinder.

There may be cases where a judge will conduct the questioning and limit or even forbid cross-examination.  *See United States v. Zimny*, 846 F.3d 458, 465 (1st Cir. 2017); *Fuentes*, 2013 U.S. Dist. LEXIS at *3, n.3.  In this case, however, the Court will allow counsel for the defense and for the prosecution to engage in cross-examination.  *Smith*, 455 U.S. at 222 ("A hearing permits counsel to probe the juror's memory, his reasons for acting as he did, and his understanding of the consequences of his action.  A hearing also permits the trial judge to observe the juror's demeanor

under cross-examination and to evaluate his answers in light of the particular circumstances of the case"); *Sampson*, 724 F.3d at 163 ("When defense counsel attempted to probe her lies about P, she resisted that line of inquiry"); *Neron v. Tierney,* 841 F.2d 1197, 1205-06 (1st Cir. 1988) ("[D]ue process may well demand interrogation of a jury *after* the defendant makes some satisfactory threshold showing of partiality or misconduct") (emphasis in original).

The Court initially concluded that Federal Defender David Beneman should conduct a direct examination of Juror 86 and then defense counsel for Mr. French and Mr. Russell should, in that order, conduct a cross-examination of Juror 86. Then the federal prosecutor will be allowed to cross-examine Juror 86. Redirect and recross-examination would be allowed as well.

Counsel for Mr. French objected to this proposal, arguing that the Court was somehow favoring Juror 86 over his client if the Court did not allow Mr. Hallett to cross-examine Juror 86 first. Defense counsel cited *Sampson* in support of his argument. Believing that *Sampson* did not set down such a rule, the Court was nonplussed by this argument and allowed Mr. Hallett to file a written memorandum, providing the basis of his argument. On January 20, 2019, Attorney Jamesa Drake filed a letter with the Court indicating that they were "unaware of any case-law that directs a different order of examination" than the one the Court proposed. *Letter from Att'y James J. Drake to Hon. John A. Woodcock, Jr.* at 1 (Jan. 20, 2019) (ECF No. 817).

Independently, the Court reviewed *Sampson* and other First Circuit caselaw and found nothing that suggests the trial court must grant defense counsel the first right to question a juror who is suspected of some sort of voir dire misconduct. Instead, a court's obligation in investigating potential juror misconduct or bias "is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so, whether it was prejudicial." *French,* 904 F.3d at117 (quoting *United States v. Paniagua-Ramos*, 251 F.3d 242, 250 (1st Cir. 2001)). The court also has the obligation, under Federal Rule of Evidence 611(a), "to exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth." FED. R. EVID. 611(a).

In fact, the First Circuit has written that defense counsel does not have the right to cross-examine a juror in similar circumstances. The First Circuit has consistently maintained that "[t]rial courts have considerable latitude in determining how to best evaluate such assertions and thus assure jury impartiality in particular cases." *Paniagua-Ramos*, 251 F.3d at 250 (citing *Neron,* 841 F.2d at 1201). "Case law makes clear that claims of jury taint are almost always case-specific. Thus, the trial court—which is likely to have a superior 'feel' for the nuances of the case—ought to be accorded considerable deference in fashioning procedures to deal with such matters." *Neron*, 841 F.2d at 1201. In light of this deference, the First Circuit held that "a convicted defendant cannot lay claim to a constitutional right to cross-question jurors in the absence of an adequate evidentiary predicate." *Id*. at 1205.

The Court sees direct examination by Federal Defender Beneman as the most effective way to begin the quest for the truth. Juror 86 responded to the written questionnaire sometime in the fall of 2013 and she participated in voir dire in January 2014, over five years ago. The Court views Federal Defender Beneman as likely being helpful to orient Juror 86 as to her son's criminal involvement in 2013 and 2014 and her knowledge of his record when she responded to the jury questionnaire and participated in jury voir dire. *See Order on Juror Right to Counsel* at 8 ("The focus is on what motivated Juror 86 in her responses then, not now"). If the initial questioning were conducted by defense counsel, there is a risk of Juror 86 being intimidated or confused and her cohesive memory will never emerge. In contrast, a direct examination conducted by Federal Defender Beneman will allow Juror 86 to provide the Court and counsel with her memory and explanation in an organized and coherent fashion. Once she has explained her recollection, the Court will allow cross-examination given its unrivaled value "in exposing falsehood and bringing out the truth." *Pointer v. Texas*, 380 U.S. 400, 404 (1965).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of January, 2019