UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00160-JAW |
| | ) | |
| MALCOLM A. FRENCH, et al. | ) | |

## ORDER ON EMERGENCY MOTION FOR RELEASE

On March 26, 2020, the Court of Appeals for the First Circuit issued an order in response to emergency motions for immediate release from two defendants whose cases are currently on appeal before the appellate court. The First Circuit determined that their appeals raised a "substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)," allowed the defendants to file a motion for release with this Court, and directed this Court to make factual findings on specific issues on an expedited basis. In compliance with the First Circuit's order, the Court has made those findings and orders the defendants released on bail pending further order.

## I.     PROCEDURAL BACKGROUND

### A.     The First Circuit Order on Motion for Temporary Bail

On June 7, 2019, on remand from the Court of Appeals for the First Circuit and after holding a post-conviction evidentiary hearing, the Court denied Malcom French and Rodney Russell's motions for new trial, which had been based on a claim of juror misconduct. *Order on Mot. for New Trial on Remand* (ECF No. 844). On June 12, 2019, Mr. French and Mr. Russell appealed the Court's order. *Notice of*

*Appeal* (ECF No. 845); *Notice of Appeal* (ECF No. 846). The Court of Appeals scheduled oral argument for April but postponed the argument—presumably due to the COVID-19 crisis. *Emergency Mot. for Temporary Bail* at 2 (ECF No. 856) (*French Mot.*).

On March 24, 2020, Mr. French filed an emergency motion for temporary bail with the First Circuit. Emergency Mot. for Temporary Bail, *United States v. French*, No. 19-1632 (1st Cir. Mar. 24, 2020). The Government responded on March 25, 2020. Appellees' Obj. to 'Emergency Mot. for Temporary Bail', *United States v. French*, No. 19-1632 (1st Cir. Mar. 25, 2020). Also on March 25, 2020, Mr. Russell filed an emergency motion for bail pending appeal. Am. Emergency Mot. for Temporary Bail, *United States v. Russell*, No. 19-1605 (1st Cir. Mar. 25, 2020). On March 26, 2020, the First Circuit issued orders denying both emergency motions without prejudice to re-file in this Court. *Order of Ct.* (ECF No. 855) (*First. Cir. Order*); *Order of Ct.* (ECF No. 858). On March 26, 2020, Mr. French and Mr. Russell both filed emergency motions for temporary bail in this Court. *French Mot.*; *Emergency Mot. for Temporary Bail* (ECF No. 857) (*Russell Mot.*). On March 27, 2020, the Court issued an interim order on the emergency motions, *Interim Order on Emergency Mot. for Release* (ECF No. 859), and held a telephone conference with counsel for Mr. French, Mr. Russell, and the Government. *Min. Entry* (ECF No. 861).

On March 30, 2020, the United States Probation Office (Probation) filed addenda to Mr. French and Mr. Russell's pretrial services reports. *Pretrial Services Report Addendum* (ECF No. 862) (*Russell Addendum*); *Pretrial Services Report*

*Addendum* (ECF No. 864) (*French Addendum*). Also on March 30, the parties filed a joint stipulation of relevant facts. *Stip.* (ECF No. 863). The Government objected to Mr. French and Mr. Russell's motions on that same day. *Gov't's Obj. to Def.'s Emergency Mot. for Temporary Bail* (ECF No. 865) (*Gov't's French Obj.*); *Gov't's Obj. to Def.'s Emergency Mot. for Temporary Bail* (ECF No. 866) (*Gov't's Russell Obj.*). Lastly, on March 30, Mr. French and Mr. Russell jointly filed a memorandum supplementing their motions. *Joint Suppl. To Defs.' Emergency Mot. for Temporary Bail* (ECF No. 867) (*Defs.' Suppl. Mem.*). Counsel for both Mr. French and Mr. Russell also filed affidavits attesting to the truth of the statements made by Mr. French and Mr. Russell about their health. *Id.*, Attach. 1, *Decl. of Thomas Hallett* (*French Aff.*); *Decl. of Counsel* (ECF No. 868) (*Russell Aff.*).

## B. The March 27, 2020, Conference of Counsel

On March 27, 2020, after issuance of its interim order, the Court held a telephonic conference of counsel to determine how best to proceed. At the conference, the Court raised several concerns. First, the Court indicated that counsel should consult with one another to determine whether there is a dispute regarding Mr. French and Mr. Russell's health concerns. Second, the Court noted that it would have to rely on counsel for information about guidance from the Centers for Disease Control and Prevention (CDC). Third, the Court asked counsel whether, in light of the constraints faced by the Court and all parties due to the COVID-19 pandemic, the parties would be able to present the court with a record in the form of stipulations and—to the extent counsel cannot agree on what the record should be—affidavits or

some other form of evidence on which the Court would be able to resolve disputes. Fourth, the Court asked the Government to consider whether to continue pressing its objection to the release of Mr. French and Mr. Russell in the face of what the Court viewed as a strong indication that the First Circuit will ultimately require a new trial for both.

The parties agreed that the Government would contact Pre-Trial Services in the United States Probation Office to assist with crafting potential bail conditions that would apply should the Court order the release of Mr. French and Mr. Russell. The parties also contemplated that this Pre-Trial Services officer could conduct an abbreviated inquiry of the health conditions of Mr. French and Mr. Russell. The parties agreed that they would file simultaneous memoranda three days after the conference.

## II. THE PARTIES' POSITIONS

### A. The Order of the First Circuit Court of Appeals

The First Circuit denied both Mr. French and Mr. Russell's emergency motions without prejudice to refile in this Court. *First. Cir. Order*; *Order of Ct.* (ECF No. 858). With regard to Mr. French's Motion, the First Circuit "observe[d] that defendant has raised a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)" and that in its objection, "the government did not rely on any argument that defendant is a danger or a risk of flight." *First. Cir. Order*. However, because the motions raised "fact-dependent questions," it left "to the district court the task of assessing defendant's risk of flight and whether bail conditions may adequately mitigate any

such risk." *Id.* Furthermore, the First Circuit left "to the district court the question of whether defendant can demonstrate the existence of exceptional reasons why his continued detention would not be appropriate" under 18 U.S.C. § 3145(c) and stated that this Court "should make findings that account for defendant's as-yet-undisputed health conditions, relevant guidance from the Centers for Disease Control, and the protocols of the Bureau of Prisons." *Id.* The First Circuit also stated that, "[s]hould defendant re-file his motion in the district court, we ask that the judge conduct any necessary proceedings on an expedited basis." *Id.*

### B.      Malcolm A. French's Emergency Motion

Mr. French begins by laying out his view of the legal framework surrounding release of individuals with pending appeals. *French Mot.* at 3-4. He proceeds to argue that (1) he does not present a flight or safety risk and his appeal raises substantial questions of law and (2) exceptional reasons tend in favor of his release.

### 1.      Flight or Safety Risk and Substantial Questions of Law

Mr. French states first that his "appeal before the First Circuit is not for the purpose of delay," as he is "presently incarcerated and his briefing before the First Circuit is complete." *Id.* at 4. Second, Mr. French points out that "this Court has never determined that [he] presented a flight or safety risk, and there is no reason to believe that he will do so now." *Id.* at 5. Third, Mr. French raises the First Circuit's dictum that his appeal raises a substantial question of law under 18 U.S.C. § 3143(b)(1)(B). *Id.* at 5. Fourth, Mr. French argues that the likelihood of success prong of Section 3143(b)(1)(B) should be resolved in his favor because the proper analysis

under *United States v. Zimny*, 857 F.3d 97 (1st Cir. 2017), is whether a new trial is likely if there was indeed the type of juror misconduct he alleges. *Id.* at 6-8.

### 2. Exceptional Reasons

Mr. French argues that the COVID-19 pandemic is an exceptional circumstance that weighs in favor of his release. *Id.* at 8. Mr. French states that he is "seeing prison staff wearing Hazmat suits," and he worries "that it is only a matter of time before positive coronavirus cases are reported at jails and prisons throughout Pennsylvania and the nation." *Id.* at 9. Mr. French say that despite any steps the Bureau of Prisons (BOP) is taking to protect the health of incarcerated individuals, the individuals at the facility where he is located are not—to his knowledge—being tested for COVID-19. *Id.* at 10. Mr. French argues that the conditions of his confinement make social distancing impracticable, and he does not have adequate access to hand sanitizer or soap, which are currently unavailable at the facility's canteen. *Id.* at 11. Mr. French notes that his description of his conditions "comports with the [CDC's] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." *Id.* at 11-12.

Mr. French points to the fact that he is nearly fifty-nine years old and has a long-time diagnosis of asthma. *Id.* at 13. He states further that two of his asthma medications "are currently contra[indica]ted for COVID-19" as they "negatively impact the immune system of individuals with asthma, and increase the risk of pneumonia." *Id.* at 13. Additionally, Mr. French was recently diagnosed with "scarring on his right lung." *Id.* at 14. In light of these aggravating conditions and

the federal government's declaration of a national emergency, Mr. French seeks to be released—until the end of the federal national emergency—to his home in "rural Enfield, Maine" where he will be able to "practice safe social distancing" within "any conditions, including electronic monitoring, that this Court sees fit to impose or recommend." *Id.* at 14-15.

### C. Rodney Russell's Emergency Motion

Mr. Russell begins by describing his conditions of confinement. He states that he "is housed in a large room where 100 to 120 men are separated by a bed cloth" from the next bunk over, and the incarcerated individuals "eat lunch shoulder to shoulder" and have "communal bathrooms and showers." *Russell Mot.* at 1-2. Additionally, because Mr. Russell is currently incarcerated at Federal Medical Center Devens (Devens), he "is housed with other individuals with seriously compromised health profiles." *Id.* at 2.

Mr. Russell argues that his situation is similar to *Zimny*. He states that he "has met the threshold requirement [for release on bail pending appeal] in that he remained out on bail during the initial trial proceeding" and the Court "has never considered [hi]m a flight or safety risk." *Id.* at 4. Additionally, "the appeal court found a colorable claim of juror misconduct," and "should th[e] pending appellate process result in a finding favorable to the defendant . . . then the defendant is entitled to bail with appropriate conditions of release." *Id.* While Mr. Russell acknowledges that he "may be barred from release by 18 U.S.C. § 3143(b)(2)," he

believes the Court may impose bail for him if it finds that his case presents "exceptional reasons" under 18 U.S.C. § 3145. *Id.*

Mr. Russell reiterates the conditions of his confinement and states that he does not have consistent access to hand sanitizer. *Id.* at 5. He further states that he is fifty-six years old. *Id.* If released, Mr. Russell avers he "will reside with his wife in South Thomaston, Maine, and he will submit to any conditions, including electronic monitoring, that this Court sees fit to impose or recommend." *Id.*

### D. The Government's Opposition as to Malcolm A. French

The Government begins by describing Mr. French's offense conduct, conviction, and appeal. *Gov't's French Obj.* at 1-2. The Government next describes BOP's response to the outbreak of COVID-19. *Id.* at 2-5. The Government then argues that Mr. French has not demonstrated that Mr. French is entitled to bail. First, the Government waives any argument that Mr. French's appeal does not raise a substantial question. *Id.* at 5. Second, the Government argues that the Court has previously made "findings supporting its conclusion that French is a risk of flight and denying an earlier motion for temporary release" and that the "circumstances found by the Court in its earlier ruling still hold true now." *Id.* at 6. Third, the Government argues that Mr. French has not demonstrated sufficient exceptional reasons justifying release, as health conditions rarely suffice and the BOP "has taken extraordinary steps to avoid or mitigate the virus'[] spread." *Id.* at 6-8.

### E. The Government's Opposition as to Rodney Russell

The Government's objection to Mr. Russell's motion largely tracks its objection to Mr. French's motion, though the Government makes a different argument as to why Mr. Russell is a risk of flight and poses a danger to public safety. On this point, the Government argues that Mr. Russell "still has a substantial amount of time to serve on his sentence, . . . has already been found to have obstructed justice . . . and . . . was involved in fleeing the marijuana grow site with several" individuals present in the United States illegally. *Gov't's Russell Obj.* at 6.

### F. Malcolm A. French and Rodney Russell's Supplemental Memorandum

Mr. French and Mr. Russell state that, "notwithstanding significant efforts undertaken by the [BOP] to control the transmission of the COVID-19 virus, there is simply very little that the BOP can do to fully comply with the recommendations of the [CDC]" as "American prisons were not designed to accommodate social distancing, the medical isolation of all or nearly all the prison population, and the simultaneous emergency medical care and treatment of more than a few inmates." *Defs.' Suppl. Mem.* at 1-2. Additionally, Mr. French and Mr. Russell argue that granting them their desired relief "will not open the floodgates to release for any incarcerated person" as few individuals in their circumstances will be able to meet the threshold requirement that their appeal raises a substantial question. *Id.* at 4. Lastly, given the exigent circumstances surrounding his request for relief, Mr. French states his objection to the Government's request for a bond requirement exceeding $100,000 due to the time it would take to gather such a sum. *Id.* at 4-5.

## III. LEGAL STANDARD

This Court has the authority to release an incarcerated defendant pending appeal under 18 U.S.C. § 3143(b)(1) under certain conditions. Section 3143(b)(1) reads:

> Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). Section 3143(b)(2) states:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained.

18 U.S.C. § 3143(b)(2).

The portion of Section 3142(f)(1) relevant here is 18 U.S.C. § 3142(f)(1)(C), which refers to "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705

of title 46." However, Section 3145(c) states that "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." The burden to show the appropriateness of this relief rests on Mr. French and Mr. Russell. *United States v. Colon Berrios*, 791 F.2d 211, 211 (1st Cir. 1986) (Defendant has "burden of demonstrating by clear and convincing evidence that he is not likely to flee").

The First Circuit most recently discussed the "raises a substantial question of law or fact" provision in *Zimny*. The First Circuit reaffirmed its conclusion in *United States v. Bayko*, 774 F.2d 516 (1st Cir. 1985), that Courts should read the phrase as requiring that the issue appealed be "a 'close' question or one that very well could be decided the other way." *Zimny*, 857 F.3d at 100 (quoting *Bayko*, 774 F.2d at 523). The First Circuit has expressly rejected any interpretation that would require the district court to conclude that its own ruling would likely be reversed, as that would present the district court with a classic "Catch 22." *Bayko* at 522-23; *see also United States v. Swan*, No. 1:12-cr-00027-JAW, 2014 WL 5392069, at *4 (D. Me. Oct. 22, 2014).

"Neither the statute nor the legislative history 'defines the circumstances which may qualify as exceptional reasons permitting release.'" *United States v. Weiner*, 972 F.2d 337, 1992 WL 180697, at *3 (1st Cir. July 31, 1992) (unpublished table decision) (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)).

In dicta, the First Circuit has stated that other courts to consider the matter "agree that there must be present 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Id.* (quoting *DiSomma*, 951 F.2d at 947). District Courts "have wide discretion in deciding whether to invoke this provision . . .." *Id.*

## IV. DISCUSSION

The Court first addresses its interpretation of the significance First Circuit's determination that Mr. French and Mr. Russell have raised "a substantial question" under 18 U.S.C. § 3143(b)(1)(B). The Court then turns to the questions the First Circuit directed it to address: the First Circuit ordered that the Court "should make findings that account for defendant's as-yet-undisputed health conditions, relevant guidance from the Centers for Disease Control, and the protocols of the Bureau of Prisons." *First Cir. Order* at 1. The Court then turns to the First Circuit's order that it consider the risk of flight for each Defendant and the extent to which bail conditions might "adequately mitigate any such risk." *Id.*

### A. A Substantial Question

The Court begins its analysis by recognizing that the First Circuit, in its order denying Mr. French's initial emergency motion, "observe[d] that [he] has raised a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B)." *First Cir. Order* at 1. The Government does not now argue that Mr. French and Mr. Russell have not raised a substantial question on appeal. *See Gov't's French Obj.* at 5; *Gov't's Russell Obj.* at 5. In accordance with the First Circuit order, the Court concludes that

Mr. French and Mr. Russell have each raised a substantial question within the meaning of 18 U.S.C. § 3143(b)(1)(B).[1]

During the telephone conference of counsel, the Government made the point that the appellate court's conclusion means only that Mr. French and Mr. Russell presented the First Circuit with a "close" question under *Zimny*. Therefore, in the Government's view, the Court should let the appeal run its course and release Mr. French and Mr. Russell only when and if the First Circuit orders a new trial.

Technically, under *Zimny*, the Government is correct, and a close question is necessarily one that could be decided either way. Nevertheless, in the context of this case, the Court views the First Circuit statement about the merits of the pending appeals as a dramatic change in the legal landscape of this case, likely presaging the vacating of Mr. French and Mr. Russell's convictions and a new trial for both Defendants.

From the Court's perspective, the First Circuit determination that Mr. French and Mr. Russell have raised a substantial question on appeal colors this Court's task and weighs heavily in favor of their immediate release. Simply put, if it is likely—as it appears to be—that the First Circuit will vacate Mr. French and Mr. Russell's convictions and order a new trial, and the First Circuit's delay in deciding the appeal is related to the current COVID-19 crisis, they should not be in prison awaiting the resolution of the COVID-19 crisis. The Court interprets the First Circuit order as

---

[1] The Government makes no suggestion that Mr. French and Mr. Russell's appeals are for the purpose of delay. After the First Circuit's substantial question determination, there is no basis for such an argument.

suggesting that Mr. French and Mr. Russell will be victorious on appeal, and this is a strong incentive to place Mr. French and Mr. Russell in the same situation they would be in if the appeal could be decided expeditiously—namely, released on bail pending trial.

### B.   Health Conditions of the Defendants

### 1.   Malcolm French

On March 30, 2020, the parties filed a stipulation regarding Malcolm French:

> [Malcolm] French's Pre-Sentence Report contains information about his physical condition.  Paragraph 69 provides: "As verified by medical records . . . French has been diagnosed with the following conditions: asthma . . .."  Paragraph 71 provides: "As verified by [jail] records . . . French is currently prescribed the following medications . . . 10 mg of Cetirizine, one time per day; two puffs of Symbicort, two times per day . . . ."

*Stip.* ¶ 2.

In addition to this Stipulation, Attorney Hallett, Mr. French's counsel,[2] made factual assertions about his health in the emergency motion.  Mr. French's attorney focused on Mr. French's "age, asthma, and scarring on his lung" and argued that these conditions "militate strongly in favor of an 'exceptional reasons' determination." *French Mot.* at 4.  Attorney Hallett expanded by stating that Mr. French "will soon be 59 years old.  He is a long-time asthma sufferer, and his diagnosis is well-documented.  In prison, French is currently prescribed three medicines to treat his asthma: asmanex inhaler, albuterol inhaler and fluticasone propionate nasal spray." *Id.* at 13.  Attorney Hallett stated that "[t]wo of these medications are currently

---

[2]    The Court refers only to Attorney Hallett here because he signed the affidavit attesting to the truth of the statements about Mr. French's health made in Mr. French's motion. *French Aff.* at 2.

contra[indica]ted for COVID-19." *Id.* Attorney Hallett wrote that "[t]he Asmanex inhaler and fluticasone spray are inhaled corticosteroids [which] negatively impact the immune system of individuals with asthma, and increase the risk of pneumonia." *Id.*

Mr. Hallett then stated that perhaps "most concerning with respect to French's lung condition is that within the past two months, prison medical staff diagnosed by x-ray that French has scarring on his right lung." *Id.* at 14. This scarring, according to Attorney Hallett, is "consistent with scar carcinoma." *Id.* Although the prison medical staff ordered an immediate MRI, this has not been performed due to the COVID-19 crisis. *Id.* Attorney Hallett represents that Mr. French "experiences unrelenting pain on his right side, which makes it difficult for him to lie down or sleep." *Id.* Attorney Hallett stated that Mr. French was advised to take ibuprofen to ease his pain, but ibuprofen "may be contraindicated for COVID-19 sufferers." *Id.*

At the telephone conference, the Court indicated that even though it had no reason to dispute Attorney Hallett's representations to the Court regarding Mr. French's health status, it would like an affirmation that Mr. French understood that the Court was relying on his representations and expected them to be accurate. On March 30, 2020, Attorney Hallett provided an affidavit to that effect. *French Aff.* ¶¶ 1-5. The Government has not contested any of the representations about Mr. French's medical condition and the Court accepts Attorney Hallett's representations concerning Mr. French's health as true for purposes of this motion.

### 2. Rodney Russell

As to Rodney Russell, the Stipulation reads:

> [Rodney] Russell's Pre-Sentence Report contains information about his physical condition. Paragraph 68 provides: "As verified by PSI-1, in 2003 and 2009, the defendant underwent nose and throat surgeries, respectively, to treat sleep apnea. Various medical records confirm that he suffered from sleep apnea and utilized a continuous positive airway pressure (CPAP) machine prior to his 2009 surgery.

*Id.* ¶ 3. In his emergency motion, Mr. Maddox, Mr. Russell's counsel, represents that Mr. Russell is "at high risk for COVID-19 susceptibility while incarcerated at Federal Medical Center (CamP) Devens in Ayer, Massachusetts." *Russell Mot.* at 1. Attorney Maddox states that Mr. Russell "takes Lisinopril for heart failure/BP, Amlodipine for high blood pressure, Aspirin for his heart, Atorvastatin for his cholesterol and Duloxetine for major depressive disorder." *Id.* Attorney Maddox notes that Mr. Russell is "56 years old. Russell takes medication for a heart condition, and sleeps with a CPAP machine." *Id.* at 5. Attorney Maddox also filed an affidavit that affirms his client stands by these representations of his health for purposes of this motion. *Russell Aff.* ¶¶ 1-3. The Government has not contested any of the representations about Mr. Russell's medical condition and the Court accepts Attorney Maddox's representations concerning Mr. Russell's health as true for purposes of this motion.

### C. Relevant Guidance from the CDC and BOP Protocols

The United States is in the midst of a global pandemic. As of the date of this order, the CDC reports 163,5394 confirmed and presumed positive cases of COVID-19 and 2,860 deaths as a result of the virus in the United States. CDC, *COVID-19: U.S. at a Glance* (Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-

updates/cases-in-us.html (last visited Mar. 31, 2020).  These are extraordinary times, and the Court certainly hopes they are exceptional.

The CDC has stated that "[c]orrectional and detention facilities . . .. present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors."  CDC, INTERIM GUIDANCE ON MANAGEMENT OF CORONAVIRUS 2019 (COVID-19) IN CORRECTIONAL AND DETENTION FACILITIES (2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (*CDC Guidance*).  These challenges include—but are not limited to—the fact that incarcerated individuals "live, work, eat, study, and recreate within congregate environments," limited options for medical isolation of those showing symptoms, preexisting conditions among incarcerated individuals that may enhance their risk of severe disease, and limited ability of incarcerated individuals to engage in disease prevention behaviors such as frequent handwashing.  *Id.*

In response to the CDC's guidance, and with its consultation, the BOP has released and is executing an action plan.  BOP, FEDERAL BUREAU OF PRISONS COVID-19 ACTION PLAN (Mar. 13, 2020), https://www.bop.gov/resources/news/20200 313_covid-19.jsp (*BOP Action Plan*); BOP, UPDATES TO BOP COVID-19 ACTION PLAN (Mar. 19, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp.  The plan is focused on restricting inmate movement and social and legal visits, as well as providing screening for COVID-19 and isolating those with symptoms.  *Id.*; *see also Gov't French Obj.* at 2-5.

The Government argues that the steps BOP is taking to reduce the risk of COVID-19 in its facilities are sufficient—or at least that Mr. French and Mr. Russell have not met their burden to show that they are not. *See Gov't's French Obj.* at 6-7; *Gov't's Russell Obj.* at 6-7. The Court hopes the Government's sanguine view prevails. On March 19, 2020, the first individual incarcerated at a federal facility tested positive for COVID-19. Press Release, Federal Bureau of Prisons, Inmate Death at FCI Oakdale I (Mar. 28, 2020), https://www.bop.gov/resources/news/pdfs/202 00328_press_release_oak_death.pdf. On March 29, 2020, he died. *Id.* His name was Patrick Jones, and he was forty-nine years old. *Id.*

In the Government's objections, it states that when it filed its objections on March 30, 2020, "only nineteen inmates in BOP custody, and nineteen BOP staff, ha[d] been diagnosed with COVID-19." *See Gov't's French Obj.* at 4-5; *Gov't's Russell Obj.* at 4-5. As of the afternoon of March 30, 2020, those numbers—according to the link provided by the Government—had ballooned upwards to twenty-eight incarcerated individuals and twenty-four staff members. BOP, COVID-19 TESTED POSITIVE CASES (Mar. 30, 2020), https://www.bop.gov/coronavirus/. While these numbers are low as a percentage of individuals incarcerated in the federal system, the impressive rate of growth—from one case on March 19 to twenty-eight cases on March 30—are obviously a matter of concern not just to the Defendants here, but to the BOP and to this Court.

Mr. French and Mr. Russell credibly allege conditions of confinement that involve close physical proximity with other incarcerated individuals and a lack of

hygienic materials with which to practice proper preventive care. *French Mot.* at 11; *Russell Mot.* at 5. As described above, both Mr. French and Mr. Russell have conditions that put them at increased risk for complications should they contract COVID-19. *French Mot.* at 13; *Russell Mot.* at 1; *Stip.* ¶¶ 2-3; *French Aff.*; *Russell Aff.*

Even so, the Government argues that Mr. French and Mr. Russell's exacerbating health conditions are not sufficient to justify release, as "'[i]t is a rare case in which health conditions present an exceptional reason' justifying release where detention would otherwise be warranted." *Gov't's French Obj.* at 6 (quoting *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008)). The Court has no quarrel with the Government's general statement and taken in isolation, if Mr. French and Mr. Russell presented only these risks without the First Circuit's Section 3143(b)(1(B) determination that they currently present a substantial question on appeal, the Court would be faced with a different question since a significant portion of the federal prison population in the United States could present a medical history as concerning as either Mr. French's or Mr. Russell's medical histories and could credibly argue that the current COVID-19 crisis places them at an enhanced risk of contracting the virus and suffering dangerous consequences if they do. Even if the COVID-19 crisis is exceptional, the Court is not faced with the argument that the risk of incarceration from the crisis alone would fit the "exceptional reasons" standard of § 3145(c) and justify immediate release. Combined with the First Circuit's

determination, however, the Court concludes that the COVID19 crisis presents an "exceptional reason" under Section 3145(c) for immediate release.

**D.      Risk of Flight and Risk of Danger to Public Safety**

The Court finds that neither Mr. Russell nor Mr. French poses a risk of flight or a risk of danger to public safety.  In making this finding, the Court relies on the fact that both men were successfully released on bail pending trial.  *Order Setting Conditions of Release* (ECF No. 47); *Order Setting Am. Conditions of Release* (ECF No. 112); *see also Zimny*, 857 F.3d at 99 (viewing successful navigation of pretrial bail as a convincing argument that a criminal defendant posed no risk of flight or danger). The Court also notes that at the time of sentencing, Mr. French had no prior criminal history, s*ee Tr. of Proceedings* at 111:13 (ECF No. 729), while Mr. Russell had a criminal history category of two, representing a relatively low level of past criminal activity.  *See id.* at 113:01.  Additionally, according to the BOP, both Mr. Russell and Mr. French have exemplary disciplinary records.  *See Russell Addendum* at 1 (stating the Mr. Russell "has not had any disciplinary actions while incarcerated"); *French Addendum* at 1 (stating that Mr. French "has not had any disciplinary actions while incarcerated").

With regard to Mr. French, the Government raises the Court's 2015 determination on a similar motion that Mr. French had not carried his burden of showing that he was not a risk of flight.  *See Gov't's French Obj.* at 6 (citing *Order on Def. Malcolm A. French's Mot. for Temporary Release and for Order Authorizing Transport by Agreement or in the Alternative by the U.S. Marshals Service* at 6-9 (ECF

No. 514) (*Release Order*)). The Court acknowledges this order; however, circumstances have changed. The Court issued that order on May 19, 2015, between Mr. French's conviction and his sentence, an especially difficult time for most people. The United States Marshal's Office objected to his release and there were significant practical obstacles to his being released, monitored, and returned to jail. *Id.* at 8. The Court had denied a multitude of post-conviction orders and, as the issue of juror misconduct had not yet been raised, the likelihood of a successful attack on the verdict was remote. *Id.* at 2. Mr. French faced a mandatory minimum sentence of 120 months and a guideline sentence range of 235 to 293 months of incarceration. *Id.* at 3. Although incarcerated in a Maine jail, he had not yet served any time in a federal prison and did not know what lay ahead. *Id.* at 2.

It is true that in 2015, in denying his motion for temporary release the Court found that Mr. French had not demonstrated that he was not likely to flee. *Id.* at 9. But it based that determination on the length of Mr. French's potential sentence, his role in hiding his undocumented workers and assisting their flight from the state of Maine, his attempted suicide while on pretrial release, his substantial financial assets which could assist his escape, and his obstruction of justice by presenting false testimony at trial. *Id.* at 6-8. Some of these factors are still present. But Mr. French is in a different legal position now than he was in May 2015. He is nearly five years older, he has adjusted to federal prison as is evidenced by the lack of a BOP disciplinary record, he is likely hopeful that the First Circuit will grant him a new trial, and he has already had his sentence enhanced for obstruction of justice.

The Court is concerned about the fact that Mr. French attempted suicide while on pretrial release leading up to the trial. *Id.* at 6-7. To release him now raises that risk again. But Mr. French also faces a health risk from COVID-19 by remaining in federal prison and he should be optimistic that the First Circuit will vacate his convictions and order a new trial. If he loses on appeal or if he wins on appeal and is re-convicted at a new trial, there would be a risk, but that risk can be addressed if and when these possibilities occur. Furthermore, Mr. French will be required under the proposed bail conditions to get medical or psychiatric treatment as directed by United States Probation. *French Addendum* at 1. The Court resolves that the risk of suicide is not greater than the risk from remaining incarcerated during this pandemic.

Following the First Circuit's order, the Court requested that Probation prepare a pretrial services report for Mr. French and Mr. Russell. On March 30, 2020, Probation filed their reports. *Russell Addendum*; *French Addendum*. Probation found that both Mr. French and Mr. Russell remain married and would be able to return to their respective residences. *Russell Addendum* at 2; *French Addendum* at 2. Probation concluded that the risks each Defendant presents could be adequately mitigated by a set of recommended bail conditions. *Russell Addendum* at 2; *French Addendum* at 2. The Court accepts Probation's recommendations and orders that the Defendants' release be conditioned upon their compliance with the bail conditions Probation recommended. *Russell Addendum*; *French Addendum*.

## V. CONCLUSION

The Court GRANTS Malcolm A. French's Emergency Motion for Temporary Bail (ECF No. 856) and Rodney Russell's Emergency Motion for Temporary Bail (ECF No. 857). The Court ORDERS Malcolm French and Rodney Russell released on bail under the terms and conditions recommended by the Probation Office at ECF Nos. 864 and 865 until further order of this Court.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2020.