UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:12-cr-00160-JAW-1 |
| MALCOLM FRENCH, | ) ) ) |
| Defendant. | ) ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a one hundred seventy-five-month sentence for orchestrating a large-scale marijuana manufacturing and distribution operation, which involved harboring illegal aliens, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Just last year, the Court dismissed an almost identical motion, and the Court concludes that the inmate's circumstances have not appreciably changed since that dismissal.

Specifically, the Court concludes that the inmate's health still does not present extraordinary and compelling reasons for compassionate release and again dismisses the motion without prejudice. In reaching this conclusion, the Court weighs the section 3553(a) factors against release in light of the seriousness of his offenses, the time he has served in relation to the sentence, and the need for the sentence that he serves to fulfill the purposes of the sentence imposed.

**I.   BACKGROUND**

The Court assumes that the parties are familiar with the factual and procedural background of this case as it approaches its thousandth docket entry.

Malcolm French is currently serving a one hundred seventy-five-month sentence for orchestrating a large-scale marijuana manufacturing and distribution operation. *Order on Mot. for Compassionate Release* at 1 (ECF No. 933) (*Compassionate Release Order*). On December 7, 2020, Mr. French filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *French's Mot. for Compassionate Release* (ECF No. 883). On May 6, 2021, the Court issued a thirty-seven-page opinion, dismissing without prejudice Mr. French's motion for compassionate release.[1] *See Compassionate Release Order*.

On June 21, 2022, Mr. French filed a self-described "emergency" motion for compassionate release. *Def. Malco[l]m A. French's Emergency Mot. for Compassionate Release (COVID-19)* (ECF No. 951) (*Def.'s Mot.*). On July 6, 2022, the Government opposed Mr. French's emergency motion. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 952) (*Gov't's Resp.*). On July 21, 2022, Mr. French filed a reply. *Reply to Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 953) (*Def.'s Reply*). On July 25, 2022, the Court dismissed so much of Mr. French's motion as demanded emergency relief and stated that it would renew the motion in ordinary course and issue a decision on the merits. *Order Dismissing Emergency Denomination* at 2 (ECF No. 954).

## II.   THE PARTIES' POSITIONS

### A.   Malcolm French's Motion for Compassionate Release

---

[1]   The first twenty pages of that Order offer a detailed account of this case's factual and procedural history.

Mr. French's thirty-seven-page memorandum lists several reasons for his emergency motion, including his medical conditions, the anticipated impact of COVID-19 and the specter of monkeypox on his underlying conditions, the general conditions at Federal Correctional Institution Loretto, changed societal attitudes about and legal restrictions on marijuana, his lack of danger to the community, and the actions of other courts in releasing inmates with more serious offenses. *Def.'s Mot.* at 1-37.

Mr. French submits that he "is a 60-year-old white male with a history of asthma, chronic fibrosing pleuritis, major depressive disorder, and a history of alcohol abuse, all of which are constitute comorbidities for COVID-19." *Id.* at 10. The bulk of his motion contends that his medical conditions make him "exceedingly susceptible" to COVID-19 and/or monkeypox while incarcerated and that this danger warrants his compassionate release. *Id.* at 13-34, 37. Mr. French contends that he has served approximately eighty-eight months in custody (as of June 2022) which, if factoring in a 15% sentence reduction for good time credit, is equivalent to having served nearly 104 months. *Id.* at 30. He argues that his sentence is "much longer than the vast majority of similarly situated offenders" and, citing a study finding that incarceration shortens life expectancy, suggests that "[his] July 31, 2027, projected release date far exceeds his current life expectancy." *Id.* at 31. Finally, Mr. French adds that the Court should also consider that "marijuana offenses are no longer as serious," he presents no danger to the community, and violent offenders and sex offenders have received compassionate release. *Id.* at 34-36.

B.     **The Government's Response**

In response, the Government suggests that Mr. French's circumstances have changed little since the Court denied his first motion for compassionate release in 2021. *Gov't's Resp.* at 2. Similarly, it further suggests that "[t]he Court should deny [Mr.] French's current motion because he fails to establish extraordinary and compelling circumstances warranting compassionate release and because other relevant considerations under 18 U.S.C. § 3553(a) continue to weigh strongly against release." *Id.*

The Government begins by offering that "[a]ccording to BOP sentence monitoring computation data provided on June 22, 2022, the defendant has served 50.2% (7 years, 3 months and 28 days) of his sentence." *Id.* at 2-3. It adds that there are few COVID-19 cases at FCI Loretto and BOP has provided vaccinations to inmates and staff. *Id.* at 4-5. Regarding monkeypox, "[t]here is no indication that the defendant, nor anyone else at FCI Loretto has contracted the disease." *Id.* at 6. Mr. French's medical records "reveal[] no medical complaints by the defendant, a normal heart rate and normal blood pressure." *Id.* The Government acknowledges that Mr. French's asthma and chronic fibrosing pleuritis may increase his risk of getting seriously ill from COVID-19. *Id.* However, while he claims to also have been diagnosed with eosinophilic esophagitis, the Government rejoins that "[t]here is nothing in the defendant's most recent medical records to indicate this diagnosis, nor a report by the defendant that he is experiencing symptoms consistent with eosinophilic esophagitis." *Id.* at 7. "There is indication of gastro-esophageal reflux

4

disease without esophagitis, however, the BOP records reflect that condition is in remission" and "[i]n any event, the condition, even if [Mr.] French has it, is not considered by the CDC as being among those that might make him a high risk of getting seriously ill if he contracts COVID-19." *Id.* The Government adds that Mr. French has received two doses of COVID-19 vaccine and two boosters, most recently on June 1, 2022. *Id.* Overall, "the defendant's underlying medical conditions and the possibility of contracting COVID-19 do not constitute an extraordinary and compelling reason warranting compassionate release." *Id.* at 14.

The Government contends that Mr. French's pandemic-related arguments ring hollow because there are currently no COVID-19 or monkeypox cases at FCI Loretto and Mr. French has been vaccinated against both COVID-19 and smallpox. *Id.* at 11. The smallpox vaccine, according to the Government, "is 85% effective in protecting a person from contracting monkeypox." *Id.* Turning to Mr. French's view that he has served sufficient time, the Government counters that he has served barely 50% of the sentence the Court imposed. *Id.* at 11-12. The Government also notes that the Court already considered changing attitudes about marijuana in crafting Mr. French's sentence and distinguishes the cases he offered as examples of violent and sex offenders being released as inapposite and irrelevant. *Id.* at 13-16. While the Government does not contest Mr. French's assertion that he presents no danger to the community, *id.* at 14-15, it concludes that, on balance, "the defendant has failed to establish extraordinary and compelling circumstances warranting release, nor has he demonstrated that the 3553(a) factors weigh in favor of release." *Id.* at 18.

### C. Mr. French's Reply

In reply, Mr. French contends that the Government failed to address his arguments that other similarly situated offenders have received shorter sentences and that his "projected release date far exceeds his life expectancy." *Def.'s Reply* at 1-2. It adds that vaccination does not preclude him from being released based on vulnerability to COVID-19 and that, despite the Government's contention, Mr. French has not been vaccinated for smallpox and remains at higher risk of contracting monkeypox. *Id.* at 2-4. In sum, "despite having been fully vaccinated and boosted against earlier strains of COVID-19, Mr. French still stands a significant risk of infection, illness, and death especially in light of his age and the fact that he is incarcerated in a facility that remains over both its rated and design capacities." *Id.* at 5.

## III. LEGAL STANDARD

"Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ruvalcaba,* 26 F.4th 14, 18 (1st Cir. 2022). "To grant the motion, the district court must find both that the defendant has presented an 'extraordinary and compelling' reason warranting a sentence reduction, . . . and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* at 18-19 (quoting § 3582(c)(1)(A)).

The United States Sentencing Commission's current policy guidance[2] for addressing compassionate release motions brought by the Director of the BOP, issued pursuant to Guideline § 1B1.13, "was last modified in November of 2018—before the F[irst] S[tep] A[ct] (FSA) amended the compassionate-release statute to allow for prisoner-initiated motions." *Id.* at 20. In *United States v. Ruvalcaba*, the First Circuit resolved that district courts are not constrained by the Sentencing Commission's 2018 policy statement in adjudicating prisoner-initiated motions for compassionate release. *Id.* at 22-23 (emphasizing that § 603(b) of the FSA "effected a paradigm shift in how compassionate release would function" and that "[g]iven the profound nature of this paradigm shift, it is fair to say that the 'purposes' and 'appropriate use' of the compassionate-release statute have swelled beyond those that inhered in the statute when the Sentencing Commission issued its original policy statement").

The First Circuit clarified that the absence of an applicable policy statement does not leave the district court's discretion "unbounded," rather it remains "circumscribed by statutory standards, which obligate the district court to find a reason that is both 'extraordinary and compelling.'" *Id.* at 23 (citing *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021) ("[T]he 'extraordinary and compelling' standard is logically guided by the plain meaning of those terms")).

---

[2]  The Sentencing Commission's list of "four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. . . remains unchanged today." *Ruvalcaba*, 26 F.4th at 20 (citing U.S.S.G. § 1B1.13 cmt. n.1 (A) – (D)). "[S]ection 1B1.13 also requires a finding that the defendant is not dangerous in order to grant compassionate release based on extraordinary and compelling reasons." *Id.* at 19-20 n.5.

7

"[M]oreover, the current policy statement—though not 'applicable'—nonetheless may serve as a non-binding reference." *Id.*

Thus, until the Sentencing Commission updates its guidance applicable to prisoner-initiated motions, "the district courts will have to assess prisoner-initiated motions for compassionate release primarily through the lens of the statutory criteria." *Id.* "Ultimately, . . . it is within the district court's discretion—constrained only by the statutory criteria[3] and any applicable policy statement—to make that [individualized assessment of a myriad of factors], case by case." *Id.* at 27-28. A court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief." *Id.* at 28.

If the prisoner meets the extraordinary and compelling circumstances standard necessary to justify compassionate release, "the district court must [also] consider any applicable section 3553(a) factors," *id.* at 19, to "determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021) (omission in *Saccoccia*). In particular, before granting the petition, a court must assess,

> [t]he nature and circumstances of the offense and the history and characteristics of the defendant, the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and] to provide the defendant with needed educational or vocational training,

---

[3] The only "explicit limitation on what may comprise an extraordinary and compelling reason" is "that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 25 (alterations in *Ruvalcaba*) (quoting 28 U.S.C. § 994(t)).

>medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). "Though the [§] 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release." *Saccoccia*, 10 F.4th at 8.

The movant bears the burden of proving that he is entitled to a sentence reduction, and the Court has discretion to determine whether "the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022) (quoting *Saccoccia*, 10 F.4th at 4); *see Saccoccia*, 10 F.4th at 4 (stating that the First Circuit's standard of review "[r]ecogniz[es] that the compassionate-release statute provides that a district court's decision to grant or deny a compassionate-release motion is discretionary").

## IV. DISCUSSION

The Court does not start from a blank slate. Last year it devoted thirty-seven pages to analyzing Mr. French's similar motion for compassionate release. Denying that motion, the Court "conclude[d] that . . . Mr. French's health conditions are not extraordinary and compelling reasons warranting his release. Moreover, the nature of Mr. French's offense, the relatively short time he has served in relation to his one hundred seventy-five-month sentence, and the need for the sentence served to fulfill the sentence imposed tip the scales against release." *Compassionate Release Order* at 29. Seeing little new evidence to change its calculus, the Court's conclusion remains the same today. Mr. French's health conditions are largely the same now as

they were last year, the threat of COVID-19 is—if anything—less than it was then, and the need for the sentence served to fulfill the sentence imposed is unaffected. The primary difference—the passage of nineteen months out of a one hundred seventy-five-month sentence—weighs slightly in Mr. French's favor but is not enough to tip the balance.

### A. Extraordinary and Compelling Reasons

To grant Mr. French's motion under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. Mr. French submits that his underlying health conditions combined with the risk of contracting COVID-19 and monkeypox create such a circumstance warranting a sentence reduction. *Def.'s Mot.* at 37.

The Court picks up where it left off. Last year, it concluded that "only two conditions put forth by Mr. French have been determined by the CDC as conditions that 'can make [a person] more likely' to get severely ill from COVID-19. Moreover, Mr. French is vaccinated, greatly reducing his risk from COVID-19 . . . The Court concludes that Mr. French has not carried his burden to prove the existence of extraordinary and compelling reasons warranting a reduction in sentence." *Compassionate Release Order* at 34.

The two conditions the Court considered on May 6, 2021 as potential risk factors were Mr. French's asthma and chronic fibrosing pleuritis, two conditions he again relies upon, but which do not appear to have appreciably worsened since the Court's prior analysis. *Id.* at 32. Mr. French adds that his "major depressive disorder,

and a history of alcohol abuse (substance use disorder)" also place him "at high risk for severe illness or death." *Def.'s Mot.* at 33. The Court does not dispute that these conditions may increase his risk to some degree, but neither appears novel or particularly acute. *See id.* (Mr. French has "sought counseling over the years" for his depression, he abused alcohol before being incarcerated—and presumably has not since). While Mr. French may be at elevated risk from COVID-19, his medical conditions ultimately do not present an "extraordinary and compelling" reason for early release. *See Saccoccia*, 10 F.4th at 5. ("not every complex of health concerns is sufficient to warrant compassionate release[, and] this remains true even in the midst of the COVID-19 pandemic").

The next step of the Court's compassionate release analysis typically involves consideration of the COVID-19 conditions at the defendant's prison. BOP records indicate that FCI Loretto currently has only a single staff member and zero inmates testing positive. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 5, 2022). The Court also noted in its prior Order that "Mr. French's risk of serious illness from COVID-19 is further significantly reduced by his vaccination." *Compassionate Release Order* at 33. Mr. French expressed concern that immunity from his Pfizer COVID-19 vaccine received in April 2021 would wane, *see Def.'s Mot. at 33,* but the record indicates that he has since received two booster shots, most recently on June 1, 2022. *Gov't's Resp.* at 7.

Mr. French also worries about being at high risk for monkeypox; however, the Government averred in July that there was no evidence of the disease at FCI Loretto.

11

*Id.* at 11.  Nationally, new reported monkeypox cases have declined from nearly 500 per day over this past summer to fewer than ten per day in recent weeks.  *U.S. Monkeypox Case Trends Reported to CDC*, Centers for Disease Control and Prevention, https://www.cdc.gov/poxvirus/monkeypox/%20 response/2022/mpx-trends.html (last visited Dec. 5, 2022).  The Court does not predict what will happen with either disease in the future but at this time, neither appears to pose a severe risk to Mr. French.  After reviewing a similar overall health record, the Court again "concludes that Mr. French has not carried his burden to prove the existence of extraordinary and compelling reasons warranting a reduction in sentence." *Compassionate Release Order* at 34.

### B. Danger to the Community

The Court last year "readily conclude[d] Mr. French is not a danger to the community." *Id.* at 34-35.  That determination remains unchanged.

### C. The Section 3553(a) Factors

Finally, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). The Court concluded in its prior order that those factors weigh against release, noting that it gave "particular weight to the serious nature and aggravating circumstances of Mr. French's offense. The offense conduct involved an extensive and sophisticated marijuana manufacturing and distribution operation, and Mr. French was found responsible for 918 kilograms of marijuana." *Id.* at 35.  While Mr. French believes that his sentence should be reduced because of changing societal attitudes on marijuana, the Court reiterates several aspects of Mr. French's "deplorable" conduct

12

it considered at sentencing and noted again in its prior Order: his operation involved the "inexcusably harsh and inhumane" treatment of migrant workers, who "spent months locked inside a warehouse processing marijuana day in and day out"; when law enforcement arrived, Mr. French and an associate "carried out plans to burn the evidence, despite the presence of propane tanks throughout the compound, placing the lives of law enforcement officers and firefighters at risk"; and, at sentencing, the Court found that his "deliberate, calculated willingness to lie repeatedly under oath in this federal courtroom before a federal judge and a federal jury is disgraceful, and it is a black mark against [him]." *Id.* at 36. The Court imposed a sentence "sufficient but no greater than necessary" in the middle of the guideline range. *Id.* at 36-37. Last year, when evaluating Mr. French's previous motion, the Court "reviewed its prior determination and reaffirm[ed] in full." *Id.* at 37. It does so again today.

In its prior Order, the Court also noted that "Mr. French has been incarcerated for less than half of his fourteen-and-a-half-year sentence." *Id.* Nineteen months later, he has now served just over half of his sentence, enough to slightly move the needle but not enough to tip the balance. The Court's ultimate conclusion is the same: "Release at this point would fail to reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence." *Id.* at 37.

### D. Summary

Mr. French has not carried his burden of proving entitlement to compassionate release. While he is not a danger to the community, his health conditions do not

13

present extraordinary and compelling reasons warranting release. Furthermore, given the nature and circumstances of his offenses, the § 3553(a) factors weigh strongly against his release. Despite its decision not to grant compassionate release to Mr. French, the Court again wishes him well and continues to hope he will complete his sentence without incident and return to society a productive and law-abiding citizen.

## V. CONCLUSION

The Court DISMISSES without prejudice Malcolm French's Emergency Motion for Compassionate Release (ECF No. 951).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of December, 2022.